### CARRINGTON v. UNITED STATES.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 223.   Argued December 16, 1907.—Decided January 6, 1908.

An office commonly requires something more than a single transitory act
to call it into being.

A money contribution by the Philippine Government to the performance
of certain military functions, and entrusting the funds to an officer of
the United States Army, who is held to military responsibility therefor
by court-martial, does not make that officer a civil officer of the Philip-
pine Government and amenable to trial in the civil courts for falsifica-
tion of his accounts as a public official.

The fact that an officer of the United States Army, entrusted with money
by the Philippine Government to be expended in connection with his mili-
tary command, signs his account "Disbursing Officer" instead of by his
military title, does not make him a civil officer of the Philippine Govern-
ment; and quære whether he could become such a civil officer in view
of the act of March 3, 1883, 22 Stat. 567, prohibiting the appointment
of officers of the United States Army to civil offices.

THE facts are stated in the opinion.

Mr. Holmes Conrad, with whom Mr. R. A. Ballinger was
on the brief, for plaintiff in error:

It appears from the record that the plaintiff in error was

(1)

not on February 12, 1904, or at any other time, a public officer of the United States civil government of the Philippine Islands, nor was he a duly appointed, qualified, and acting disbursing officer for public funds of that government, as stated in the charge. Accused could not be a public official of such civil government at any time under the laws of the United States. 22 Stat. 567; 1st Supp. Rev. Stat., ch. 124, p. 412.

The charge against this man is official misconduct, "abuse of his office." To sustain this criminal charge, there must be shown, first, that there was such an office as that which he is charged with having held; secondly, that he was duly appointed to that office; thirdly, that he qualified as such officer; fourthly, that he actually held that office under such appointment and qualification; and, fifthly, that the "abuse of his office" with which he is charged, viz., that he did "falsify a public or official document of which he had charge," is an offense known to the common law, or the statute law, or even to the Philippine law. *In re Bonner*, 151 U. S. 259.

While holding the office of major of the First Infantry, United States Army, and while on duty as such officer, under the assignment and orders of his superior officers, he was not amenable to the courts or subject to the laws of the civil government of the Philippine Islands for any offense committed by him in connection with the performance of his duties as a major of infantry in the United States Army.

As citizen of the United States and a commissioned officer of its army, lawfully stationed in the Philippine Islands, he was entitled to a trial by jury.

The punishment to which he was sentenced was illegal because cruel and unusual.

*The Solicitor General* for defendant in error:

The facts as to defendant's holding a civil office were that upon his own initiative, by resolution of the Philippine Commission and the action of the Governor, he was designated to receive, expend and account for a certain fund for the Philip-

pine Scout Exhibit at the St. Louis Exposition, and he accepted the post and acted accordingly. The Philippine Supreme Court found that he acted as a public official and took part in the performance of public duties. Whether he held a civil office or not, strictly speaking, he was empowered by competent authority, he accepted and discharged the duties imposed upon him, and held himself out as a public official of the Philippine government. He was thus an officer *de facto*, and not a mere intruder, and he cannot escape liability by denying title. *Hussey* v. *Smith*, 99 U. S. 20; *Buck* v. *City of Eureka*, 109 California, 504; *Allen* v. *McNeel*, 1 Mills (S. Car.), 229; *Diggs* v. *State*, 49 Alabama, 311; *People* v. *Church*, 1 How. Pr. 366; *State* v. *Long*, 76 N. Car. 254; *Wendell* v. *Fleming*, 8 Gray, 613. He was an official within § 401 of the Philippine Penal Code. And see 2 Viada, 695, as to the wide extension and latitude of the law.

The provisions of § 1222, and par. 4, § 1860, Rev. Stat., as amended, are inapplicable. They apply to the United States and organized Territories and not to the Philippines. They were enacted long before the islands were acquired, and their provisions have not been extended to the islands. Evidently neither Carrington nor his military superiors thought that he was subject to these prohibitions.

Carrington was not entitled to a trial by jury. *Dorr* v. *United States*, 195 U. S. 138. A soldier has no greater right than any other person in this respect. In the United States he is amenable to the civil courts for civil offenses, and if he is sent under the orders of his commanding officers to a State where the common law as to juries is not followed, he could not demand presentment and trial under the Constitution. The constitutional guarantees of trial by jury apply only to citizens and others within the United States or who are brought there for trial for offenses committed elsewhere, and not to residents or temporary sojourners abroad. *In re Ross*, 140 U. S. 453. The reasoning of that decision applies equally to citizens, whether soldiers or not, in a territorial possession of

the United States and before courts under the authority of the United States proceeding without a jury. To have two systems in the Philippines for different classes of persons is an impossible conception, and would be inconsistent with the express guarantee of the equal protection of the laws to all persons in the islands, contained in the Philippine Bill of Rights.

There is no foundation for the idea or claim that Carrington as an officer of the army was not subject to the jurisdiction of the Philippine courts at all. Nothing to that effect was intimated in *Grafton* v. *United States*, 206 U. S. 333. The points of decision in that case involved the implication that the military and civil jurisdiction were concurrent, and that the civil trial and conviction there would have been valid if the court-martial had not first tried and acquitted. The question always is, which jurisdiction attaches first? The civil courts took jurisdiction here, and subsequently, Carrington was court-martialed on the same transactions under the 61st Article of War, and was dismissed from the service.

MR. JUSTICE HOLMES delivered the opinion of the court.

The plaintiff in error was convicted in the Court of First Instance, and, on appeal, by the Supreme Court of the Philippine Islands, of the crime of falsification of a public document by a public official. He brings the case here by writ of error, setting up rights under the Constitution and statutes of the United States that were denied by the decision below.

The complaint alleges that the plaintiff in error " being then and there a public official of the United States civil government of the Philippine Islands, to wit, a duly appointed and commissioned major of the First Infantry, United States Army, and the duly designated, qualified and acting commander of the Provisional Battalion of the Philippine Scouts, and a duly appointed, qualified and acting disbursing officer for public funds of the said United States civil government of the Philippine Islands, appropriated on account of said Provisional Battalion and on account of the Louisiana Purchase Exposi-

tion at St. Louis," made a false voucher for the payment of seven hundred and seventy pesos.

The plaintiff in error denies that he was a public official within the meaning of the Philippine Penal Code, Art. 300, or that, under the act of March 3, 1883, c. 134, 22 Stat. 567 (see Rev. Stat. §§ 1222, 1860), he could be, while he remained an officer in the Army on the active list. The facts are as follows: In October, 1903, the plaintiff in error wrote a letter to the Executive Secretary of the Insular Government, suggesting that, as the Second Battalion of Philippine Scouts was expected to take part in the Louisiana Purchase Exposition, it would be well to allow the writer, with his scouts, to put up a model administration building of native materials for his use, at St. Louis, decorated with native arms, etc., and estimating that he could do this work for $3,000, gold. Governor Taft referred his letter to the Exposition Board, recommending the project, and the board accepted it. In November the Civil Commission passed a resolution, authorizing the transfer "to the credit of Major F. L. Carrington, 1st United States Infantry, commanding the Provisional Battalion of Philippine Scouts to be transported to St. Louis in 1904 in connection with the Philippine Exhibit," the sum of $3,000, "to be used and accounted for by Major Carrington in the construction" of a model administration building. It was resolved further that the disbursing officer of the Philippine Exposition Board should deposit to the credit of Major Carrington the further sum of $500, with which to pay some of the expenses of families of scouts allowed to accompany them to St. Louis, and that, on the approval of the resolutions by certain officials, the Civil Government might "designate Major Carrington as disbursing officer to receive the funds mentioned." The resolutions were approved, and Governor Taft in the same month addressed a letter to "Major Frank de L. Carrington, 1st U. S. Infantry, commanding Provisional Battalion Philippine Scouts," saying, "You are hereby designated to withdraw, receive, expend, and account for, the funds" above mentioned,

"to be expended in the preparation and display of a Scout Exhibit at the Louisiana Purchase Exposition as set forth in said resolution." These are all the facts that are supposed to constitute the plaintiff in error a public official within the Philippine Penal Code, although, it should be added, that in signing the false document he added, after his name, "Maj. 1st Infantry, D. O.;" the last letters meaning, it may be presumed, Disbursing Officer.

At this time the plaintiff in error was an officer of the Army on the active list, detached to command a battalion of Philippine scouts, admitted to be a part of the military establishment of the United States. Leaving names on one side, what happened was that he received $3,500 from civil sources, to be used by him in connection with his military command, in the performance of duties incident to that command. On the face of it the proposition is extravagant that the receipt of a small sum to be spent and done with forthwith in this way made him an officer of the civil government, notwithstanding the source from which it came, or the fact that he sent his accounts to the same quarter. An office commonly requires something more permanent than a single transitory act or transaction to call it into being. The letter of Governor Taft which designated Major Carrington to receive the fund says nothing about appointing him a civil or any kind of officer, nor did he qualify as one in any way. He was addressed by Governor Taft and he acted in his military capacity and under his military responsibility. He has been held to that responsibility by a court-martial. The only color for an additional liability is in the words quoted from the resolution of the Civil Commission, authorizing the Civil Governor to designate Major Carrington as disbursing officer, words which the Governor wisely did not adopt, and in the fact that the plaintiff in error gave himself that name. It is unnecessary to inquire whether he could have made himself a civil officer if he had tried, in view of the act of Congress absolutely prohibiting it. Act of March 3, 1883, c. 134; 22 Stat. 567. No one dreamed

that he was attempting it, and if he could have succeeded at the expense of his place in the Army under Rev. Stat. § 1222, no one supposed that he had done so, but he continued in his military command undisturbed.

We think it entirely plain that the acceptance of the duty of spending and accounting for this small fund did not amount to holding a civil office within the statutes of the United States. We see no sufficient reason to believe that the Philippine Penal Code, Art. 300, purports or attempts to reach a case like that of the plaintiff in error. The provision in Art. 401 that for this purpose every one shall be considered a public official who, . . . by popular election or appointment by competent authority, takes part in the exercise of public functions, does not help Article 300. That also seems to contemplate an office having some degree of permanence. But however that may be, the plaintiff in error was performing no public function of the civil government of the Philippines; he was performing military functions to which the civil government contributed a little money. As a soldier he was not an official of the Philippines but of the United States. If Philippine legislation attempted to add to the immediate responsibilities of the soldier in the course and performance of his duty under the paramount authority from which that legislation derives its right to be, we should have to inquire whether we could gather from any act of Congress the intention to permit what might become the instrument of dangerous attacks upon its power. It is a wholly different question from that where a soldier not in the performance of his duty commits an ordinary crime. But we do not understand the Penal Code to have the suggested scope.

*Judgment reversed.*

The same judgment will be entered in Nos. 224 and 225, which were to abide the result of this case.