## ALZUA *v.* JOHNSON.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 306. Motion to affirm submitted October 27, 1913.—Decided November 10, 1913.

This court is slow to revise the judgment of the highest court of a Territory on matters of local administration.

Judges of United States courts are not liable to civil actions for their judicial acts. *Bradley* v. *Fisher*, 13 Wall. 335.

The principle of immunity of judges from civil action for their official acts is so deep seated in the system of American jurisprudence that this court will regard it having been carried into the Philippine Islands as soon as the American courts were established therein.

The immunity of judges of the Supreme Court of the Philippine Islands from civil actions for official acts is the same as that of judges of the United States.

Act No. 190 of the Philippine Commission did not impose any liability to civil actions for official acts on any judge of the Supreme Court of the Philippine Islands; that act related only to inferior judges.

A statute, such as that involved in this case, providing that no judge shall be liable to civil action for official acts done in good faith, will not be construed as rendering such judges liable to civil action for acts done in bad faith by implication.

*Quære* whether the Philippine Commission has power to enact legislation making any judge liable to civil action for official acts.

21 Philippine Reports, 308, affirmed.

THE facts are stated in the opinion.

*Mr. Evans Browne, Mr. A. B. Browne, Mr. Alexander Britton* and *Mr. W. A. Kincaid* for defendant in error, in support of the motion.

*Mr. Harry W. Van Dyke, Mr. Charles A. Douglas, Mr. Thomas Ruffin* and *Mr. Hugh H. Obear* for plaintiffs in error, in opposition thereto.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the plaintiffs in error against a justice of the Supreme Court of the Philippine Islands. Its allegations much abridged are as follows: The plaintiff Alzua had a judgment, in Cause No. 3274, declared to be a first lien upon two stores, among other things, of Martinez, widow of Soler, and Riu, the judgment debtors; the sheriff levied; two Solers, sons of Martinez, demanded that the sheriff dismiss the levy as they were owners of the stock levied upon; the plaintiff Alzua gave the sheriff a bond, on October 14, 1905, and thereupon the sheriff proceeded to advertise and sell the property concerned. On the same October 14 the above mentioned Solers brought

suit (No. 4017) against the sheriff and the present plaintiff, Alzua, alleging that the Solers owned and were entitled to possession of the property and praying for an injunction and damages. The trial court decided for the sheriff and Alzua and the Solers appealed to the Supreme Court. On March 27, 1907, that court including the defendant affirmed the decision, postponing a statement of the grounds, and ordered judgment in twenty days and a return of the record ten days thereafter. The term ended on March 31. In vacation, on April 8, the defendant without consulting the other judges changed the judgment of affirmance to one of reversal and gave orders accordingly, so that on July 29 the record was returned to the court below with judgment reversed. The defendant then prepared a decision, filed September 14, which was signed by five justices including the defendant, and with intent to injure Alzua falsely stated therein that the Solers were preferred creditors of Martinez and Riu, well knowing that they alleged themselves to be owners and that Martinez and Riu were not parties to the suit and could not be bound by the decision. No final judgment has been rendered in the cause.

On August 22, 1907, the Solers brought another suit (No. 5719), against the sheriff, Alzua, her husband and the other obligors on the bond given to the sheriff, to which Martinez and Riu afterwards were made parties, alleging that the Solers had a preferred credit in the previously mentioned property. On November 29, the court dismissed the suit as to all but Martinez who confessed liability, and entered judgment against her. The Solers appealed to the Supreme Court and the case was submitted to six judges including the defendant. The defendant prepared a decision and with intent to injure the plaintiff set forth further false statements, viz: that in the demand on the sheriff that he dismiss the levy, the guardian *ad litem* of the Solers alleged that their claim was a

preferred claim, whereas they claimed as owners and partners; that the Supreme Court had decided in the former suit, No. 4017, that the Solers had a preferred credit for P. 9868.29, whereas the defendant knew that the decision in 4017 had not been pleaded or put in evidence; that the cause No. 5719 was brought upon the bond for the above sum together with damages, &c. P. 11068; the defendant knowing that the sheriff, acting sheriff, Martinez, and Riu were also defendants and that the first named sum alone was in issue and no damages proved; that the cause No. 5719 was instituted on October 1, 1907, well knowing that it was begun on August 22; before, not after the last decision (of September 14), in the former case; that the record in No. 5719 shows that the bond was given to the sheriff after the issue of an injunction in No. 4017, whereas it does not; and finally that the sureties on the bond had bound themselves thereby to respond to the Solers for the amount of the claim that the Solers had against Martinez and Riu, whereas the bond was given to the sheriff and the Solers were not parties to it.

The declaration goes on to allege that with the same intent the defendant did not discuss the actual questions or evidence; that he obtained the signatures of the other judges upon his representation that the decision set forth an impartial and fair statement of the case, he knowing the contrary; and further that Justice Elliott who sat at the hearing did not sign the decision and was not informed of it. It further alleges that defendant omitted the names of Martinez and Riu and directed the clerk to enter judgment against the other defendants only, knowing who were parties and what had been the judgment below. Thereafter on February 8, 1910, pursuant to the decision and defendant's orders, judgment was entered against Alzua and three others for P. 11068 with interest, on the ground that the Solers were creditors of Martinez and Riu and preferred to Alzua; although, it is said, Mar-

tinez and Riu were absolved by the judgment. Averments are reiterated that the defendant performed all the acts alleged in relation to Nos. 4017 and 5719 wrongfully with intent to injure the plaintiff with knowledge of the facts set forth and that such knowledge appears from inspection of the decisions in Nos. 4017 and 5719. Execution issued and the present plaintiffs paid the judgment in 5719, but to do so had to sell their property at a great sacrifice. The plaintiffs therefore seek judgment for the actual value of the property sold, the income that would have been realized, and punitive damages; P. 115000 in all. A demurrer to the declaration was sustained by both courts below, and the plaintiffs being unable to better their case by amendment, judgment was entered and the complaint dismissed.

Abridged once more this complaint is that the defendant without jurisdiction entered a judgment against the plaintiff contrary to an order of the full court, and in the opinion by which the full court ratified the change made a false statement of fact; that in the opinion of the full court in a second suit he inserted various false statements, including one attributing to the first judgment an effect that it could not have in the circumstances, all with full knowledge and intent to injure the plaintiff, which knowledge appears from inspection of the opinions, and that the plaintiff had to pay the second judgment at a sacrifice.

It is apparent that there are other difficulties beside the immunity of the judge in the way of such a suit. In the first place the Supreme Court of the Philippines decides that the judge had jurisdiction to make the change— a matter of local administration on which we should be very slow to revise the judgment. *Gray* v. *Taylor*, 227 U. S. 51, 57; *Fox* v. *Haarstick*, 156 U. S. 674, 679. Next, the judges, on inspection of the opinions and records which they regard as incorporated in the complaint and for which they were responsible by their assent, are of opinion that the statements in the former opinions were

correct and that the decisions were right, and of course reject the suggestion that they were deceived when they rendered the judgments. It might be added that the complaint hardly makes it clear that any of the alleged misstatements, some of which at least were irrelevant to the result, were the determining causes of the judgment of which the plaintiff complains.

But however it may be as to the matters that we have stated, we regard it as fundamental that the immunity of the defendant from this suit is the same as that of judges in the United States, which is established beyond dispute. *Bradley* v. *Fisher*, 13 Wall. 335; *Randall* v. *Brigham*, 7 Wall. 523. Whatever may have been the Spanish law this is a principle so deep seated in our system that we should regard it as carried into the Philippines by implication as soon as we established courts in those islands. Vol. I, Acts of Philippine Commission Nos. 136, 222, pp. 252, 556. Act of Congress of July 1, 1902, c. 1369, §§ 1, 5, 32 Stat. 691, 692. Reasons somewhat analogous to those adverted to in *Carrington* v. *United States*, 208 U. S. 1, 7, make the rule perhaps more important in the Philippines than it is here. It is true that in Act No. 190, § 9, of the Philippine Commission (1901), it is provided that "no judge, justice of the peace or assessor shall be liable to a civil action for the recovery of damages by reason of any judicial action or judgment rendered by him in good faith, and within the limits of his legal powers and jurisdiction," and it is argued that this imports that any judge shall be liable for a judgment rendered in bad faith. But without considering the question of power, we are of opinion for the reasons to which we have referred that this should not be construed to convey such an implication, at least as to judges of the Supreme Court. The section is shown to have had in mind inferior judges and the like by its mention of justices of the peace and assessors as to whom a different rule has been held to prevail.

We think it manifest that the question on which the decision of this cause depends needs no further argument and that the judgment should be affirmed.

*Judgment affirmed.*