## SACKS v. STECKER.
### No. 204.

Circuit Court of Appeals, Second Circuit.

July 5, 1932.

Arthur H. Haaren, of New York City, for appellant.

John L. Clark, of New York City (Boyd MacLean, of Jersey City, N. J., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the defendant from a judgment recovered by the plaintiff in an action of libel.

The plaintiff was a real estate broker who had asserted a claim for commissions earned in procuring a purchaser of a parcel of land belonging to the Hudson County Consumers' Brewing Company, of which the defendant was president. When this parcel was sold (as the defendant claimed through other channels), the plaintiff brought a suit against the corporation and the defendant in the New Jersey Court of Chancery to recover his commissions, to have them declared a lien on the proceeds of sale, and to restrain the distribution of the proceeds pendente lite. In this suit and in answer to a motion for the temporary injunction, the defendant filed an affidavit, in reply to the plaintiff's motion papers, containing the following statement:

"In conclusion I beg to say to this Court as an evidence of the complainant's attitude and total disregard for the proprieties and decencies that complainant Sacks called at my office in the brewery building and demanded his $12,000.00 commission, which I refused to recognize then as at all times before. Thereupon he made the statement that the people in the Court House were getting desperate and insisted on their money and if they did not get it there would be gun play and that my life was not safe unless this claim was recognized and paid. I told him then and there that I would not submit to intimidation and that the claim would not be recognized or paid and that if any further threats were made I would invoke the co-operation of the authorities for my personal protection. Since then, the complainant has kept away from me."

After this affidavit was filed in the Court of Chancery, the plaintiff brought the present action of libel, alleging that certain of the statements above quoted were false in fact, were known by the defendant to be

false, were not pertinent to any issue in the suit in the Court of Chancery, and were made with actual malice and with the willful intent to injure plaintiff in his reputation and good fame and in his business.

The particular statements in the affidavit, alleged to have been false, were that "the people in the Court House were getting desperate and insisted on their money and if they did not get it there would be gun play and that (his) life would not be safe unless this claim was recognized and paid," and also that defendant had said to plaintiff that he "would not submit to intimidation" and that, "if any further threats were made (he) would invoke the co-operation of the authorities for (his) personal protection."

The defendant made a motion to dismiss the complaint on the ground that it did not state a cause of action. Judge Inch denied the motion. He held that the words above quoted were on their face defamatory and, though used in an affidavit filed by a party in a judicial proceeding, were not absolutely privileged if they were uttered with express malice. While he said in his opinion that it is the general rule in the state courts that such an affidavit is absolutely privileged, if the matter in it is pertinent to the issue, he denied the motion to dismiss on the ground that the Supreme Court had laid down a different rule in White v. Nicholls, 3 How. 266, 11 L. Ed. 591, and Nalle v. Oyster, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439, and had treated the privilege as one which proof of express malice would overthrow.

It is true that the opinion in White v. Nicholls, 3 How. 266, 11 L. Ed. 591, contains dicta to the general effect that there can never be an absolutely privileged communication where words are uttered with express malice and without probable cause. But there the defamatory words were not published in the course of judicial proceedings, but were contained in a petition addressed by the defendant to the President and the Secretary of the Treasury requesting the removal of a collector of the port. Defamatory matter published upon such an occasion has never been a subject of absolute privilege. The general remarks in the opinion of Justice Daniel rendered nearly ninety years ago, and before the development of much of the modern law of libel, can hardly stand against an overwhelming body of authority in this country and England, where they were in no wise necessary for the decision of the question before the court. Nor can we regard the opinion in Nalle v. Oyster, 230 U. S. 165, 33 S.

Ct. 1043, 1047, 57 L. Ed. 1439, as controlling the present case. The declaration there contained two counts, setting forth causes of action for libel.

The first count averred that the plaintiff was a teacher in the public schools of the District of Columbia, and alleged that the defendants, maliciously intending to injure her reputation, published as their answer in a legal proceeding (wherein they and others composing the board of education were named as defendants) a false and defamatory libel to the effect that she was not sufficiently qualified to continue to teach, but was deficient in the necessary academic and pedagogic equipment of a competent teacher, so that the board of education had been unable lawfully to continue her in employment. To this count the defendants demurred. The Supreme Court held that the demurrer should be overruled and the defendants required to answer the allegations of the count. Justice Pitney adverted to the fact that the count contained allegations of malice and falsehood and that there was nothing in it to show the nature of the proceeding in which the answer was filed or that the plaintiff was a party to it or that "the alleged libelous matter was pertinent or material to the issue." In other words, the court held that, when the declaration set forth libelous matter contained in an answer interposed by the defendant in another proceeding and charged express malice, the defendant must avoid the allegation of malice by setting up his privilege. The disposition of this count turns solely on a point of pleading. While certain dicta from White v. Nicholls were quoted to the effect that any privilege would fall upon proof of express malice, these dicta were quoted to show that the declaration which alleged express malice but did not indicate that the defamatory statements were pertinent, called for an affirmative plea and would withstand a demurrer. The question of absolute privilege was not involved.

The second count alleged that the proceeding in which the defendants had filed their answer was a petition by the plaintiff to obtain a writ of mandamus to compel her reinstatement as a teacher, and that the answer containing the defamatory matter was known to be false and was intended to prevent the plaintiff from securing employment. The defendants filed two pleas to this count (1) setting up the defense of res judicata, because the petition for the writ was decided in their favor; (2) setting up absolute privilege because the alleged defamatory matters

in their answer were pertinent to the issues. To these pleas the plaintiff demurred. The Supreme Court overruled the demurrer, holding, first, that the adjudication dismissing the petition for the writ of mandamus was a bar; second, that the subject-matter of the alleged libelous answer was privileged; and, finally, that, even if malice would destroy the defense of privilege, because of the rule laid down in White v. Nicholls, supra, the former adjudication in the mandamus proceeding established that the answer was neither false nor malicious..

It is apparent from the foregoing analysis of White v. Nicholls, 3 How. 266, 11 L. Ed. 591, and Nalle v. Oyster, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439, that it was not decided in either case that a party who maliciously publishes defamatory matter having relation to the issues involved in a judicial proceeding has not personal immunity from an action for libel. Remarks in the opinion in White v. Nicholls indicating that there can be no immunity from liability for malicious wrong were mere dicta.

Such federal courts as have dealt with the question of liability for defamatory matter published in the course of judicial proceedings have, like the state courts, held that parties to such proceedings have absolute immunity for defamatory statements if they fairly relate to the subject-matter of the controversy. Young v. Young, 57 App. D. C. 157, 18 F.(2d) 807; McGehee v. Insurance Co. (C. C. A.) 112 F. 853; Harlow v. Carroll, 6 App. D. C. 128. See, also, our dictum to the same effect in Anonymous v. Trenkman (C. C. A.) 48 F.(2d) 571, at page 574.

■ The alleged defamatory statements in the affidavit filed by the defendant in the New Jersey Chancery Court were relevant to the issues before that court because they showed that the plaintiff was attempting to secure payment of commissions by threats and intimidation and because they embodied the conversations of parties to the real estate transactions out of which the claim for commissions arose. They also indicated that others than the plaintiff were interested in the commissions and thus tended to show who might be the real owners of the asserted claim. Such unconscionable methods of attempting to collect a claim might well bear on the likelihood of its existence and on the right to obtain equitable relief. Where relevancy is the test of immunity from liability for statements in a pleading the rule is liberal, and doubts are resolved in favor of the pleader. Andrews v. Gardiner, 224 N. Y. at page 445,

121 N. E. 341, 2 A. L. R. 1371; Youmans v. Smith, 153 N. Y. at page 219, 47 N. E. 265; Young v. Young, 57 App. D. C. 157, 18 F. (2d) 807, at page 809; Harlow v. Carroll, 6 App. D. C. 128.

■ By an almost unbroken line of authority in this country and England, a party who files a pleading or affidavit in a judicial proceeding has absolute immunity, though his statements are defamatory and malicious, if they relate to the subject of inquiry. In the recent case of Andrews v. Gardiner, 224 N. Y. at page 446, 121 N. E. 341, 343, 2 A. L. R. 1371, Cardozo, J., quoted with approval the words of Lord Mansfield in Regina v. Skinner, Lofft. 55, that: "Neither party, witness, counsel, jury, or judge, can be put to answer, civilly or criminally, for words spoken in office." This, so far as civil remedies go, is still the law of England, and, if the words spoken relate to the subject of inquiry, is the practically universal rule in this country. A collection of the authorities appears in a learned article entitled, "Absolute Immunity in Defamation," by Judge Van Vechten Veeder, in volume 9 of the Columbia Law Review. The reasons for the doctrine of absolute privilege as it has been generally adopted in common-law courts are there clearly given. The author says (at page 469):

"The true doctrine of absolute immunity is that, in the public interest, it is not desirable to inquire whether utterances on certain occasions are malicious or not. It is not that there is any privilege to be malicious, but that, so far as it is a privilege of the individual, the privilege is to be exempt from all inquiry as to malice; the reason being that it is desirable that persons who occupy certain positions, as judges, jurors, advocates, or litigants, should be perfectly free and independent, and that, to secure their independence, their utterances should not be brought before civil tribunals for inquiry on the mere allegation that they are malicious. The rule exists, not because the malicious conduct of such persons ought not to be actionable, but because, if their conduct were actionable, actions would be brought against them in cases in which they had not spoken falsely and maliciously; it is not a desire to prevent actions from being brought in cases where they ought to be maintained, but the fear that if the rule were otherwise, numerous actions would be brought against persons who were acting honestly in the discharge of a duty. * * *"

■ For the foregoing reasons derived from the authorities we regard the affidavit filed by

the defendant in the New Jersey Court of Chancery as absolutely privileged. The broad dicta of White v. Nicholls, 3 How. 266, 11 L. Ed. 591, doing away with any rule of absolute privilege, is against the underlying theory of such decisions as Randall v. Brigham, 7 Wall. 523, 19 L. Ed. 285, Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 646, Alzua v. Johnson, 231 U. S. 106, 34 S. Ct. 27, 58 L. Ed. 142, and Yaselli v. Goff, 275 U. S. 503, 48 S. Ct. 155, 72 L. Ed. 395, and would logically involve a different result.

After the decision denying the motion to dismiss the complaint because it failed to state a cause of action, the case proceeded to trial. The trial judge, as he properly should have done, treated the prior decision upholding the complaint in this action as the law of the case, so far as he was concerned, and left to the jury the question whether defamatory statements in the affidavit filed in the Court of Chancery were true or false, and whether, if false, they were uttered with malice. The jury returned a verdict for the plaintiff, on which the judgment appealed from was entered. In view of defendant's immunity, the case was tried and judgment rendered upon an erroneous theory of law. It must be reversed if error has been sufficiently raised for this appeal.

The difficulty is that the defendant assumed that the trial judge would follow the law laid down by Judge Inch to the effect that the privilege was not absolute. Accordingly, though his counsel moved for a dismissal at the close of the plaintiff's case and also at the end of the whole case, the only ground stated was that no malice had been shown. It is perfectly plain that, if the defendant had moved on the ground that he was immune from liability because of an absolute privilege, the motion would have been denied because of the order of Judge Inch. Commercial Union of America v. Anglo-South American Bank (C. C. A.) 10 F.(2d) 937. We do not regard the statement of this ground on the motion to dismiss as necessary to enable us to review the correctness of the judgment where the record shows that it would have been no more than a formality which could not have affected the conduct of the trial. The motions to dismiss were denied, and exceptions were taken. Where the record shows that the case was tried on an erroneous theory throughout, we shall overlook the failure to specify a ground for dismissal which would in every sense have been futile. Murdock v. Ward, 178 U. S. at page 149, 20 S. Ct. 775, 44 L. Ed. 1009; United States Shipping Board

v. Dietrich (C. C. A.) 27 F.(2d) 681. Under our Rule 10 we notice the error which was fatal to the judgment rendered and overlook the failure to assign it precisely.

Judgment reversed.