**Millard Dee GRUBBS, Plaintiff,**

v.

**Leonard SLATER, Tom Mapother et al., Defendants.**

**Civ. No. 2797.**

United States District Court
W. D. Kentucky, at Louisville.
July 8, 1955.

Millard Dee Grubbs, pro se.

Marshall Eldred, Blakey Helm, and J. Dudley Inman, Louisville, Ky., for defendants, Judge Sims, Judge Stewart, Judge Combs, Judge Bossmeyer, Judge Farnsley, and Mr. John L. Kelty.

Raymond Stephenson, Louisville, Ky., for defendant, Judge Farnsley.

Alfred Krieger, Sr. and Alfred Krieger, Jr., Louisville, Ky., for defendants, Leonard Slater, Slater & Gilroy, Inc., and Thomas C. Mapother and Elmer E. Morgan.

Wilson W. Wyatt and Edgar A. Zingman, Louisville, Ky., for defendants, Courier Journal and Louisville Times and Barry Bingham.

SHELBOURNE, Chief Judge.

June 29, 1954, the plaintiff Millard Dee Grubbs filed a petition in this Court, naming as defendants Leonard Slater, Tom Mapother, Elmer Morgan, Slater & Gilroy, Inc., Burrell H. Farnsley, John L. Kelty, Ray Bossmeyer, Barry W. Bingham, The Louisville Courier Journal and The Louisville Times Company, Brady M. Stewart, Bert T. Combs and Porter Sims. All of the individual defendants are residents of the State of Kentucky and both named corporations were organized and carry on business in the State of Kentucky. As to jurisdiction, the petition alleged "This is an action at law for damages because of the denials of plaintiff's Civil Rights, and arises under Title 42, § 1983, of the United States Code Annotated. The jurisdiction of the Court is conferred by Title 28, Section 1343 of the said United States Code."

The petition is in five separate paragraphs. The first paragraph alleges in substance that on October 1, 1951, the defendants Leonard Slater, Tom Mapother and Elmer Morgan, filed written notice and commenced a summary proceeding against him in the Circuit Court for Jefferson County, Kentucky; that acting or claiming to act under color of the law, by falsehood, fraud, suppression of the truth, libel and arbitrary exercise of judicial powers, defendants denied the plaintiff and caused him to be denied and deprived of due process

of law and caused him to be deprived of the equal protection of the laws of the State of Kentucky, and on October 26, 1951, rendered and caused to be rendered a judgment against the plaintiff in the amount of $555.85. He alleges that the judgment rendered in the summary proceeding was null and void because no such case was pending in Court as the caption in said notice falsely described; that the summary proceeding in which the judgment was rendered was not authorized and without legal sanction and warrant of law; that the Court had no jurisdiction of the subject matter of the notice on which the judgment was rendered; that the note referred to and described in the said notice had been litigated and decided and was res judicata and that the proceeding was barred by law; that the notice was a collateral attack upon the personal judgment which the Liberty National Bank and Trust Company recovered against Leonard Slater on January 12, 1951; that the plaintiff filed a response in the summary proceeding to the motion, denied the statements made but that his response was ignored and by-passed by the exercise of arbitrary power and plaintiff denied his right of trial and his day in Court; that the judgment against plaintiff was prefaced and coupled with a false and fraudulent order entered on October 26, 1951, by Burrell H. Farnsley in said proceeding, which "purported to sustain a non-existent and imaginary demurrer to the plaintiff's counterclaim and set-off which had been dismissed without prejudice on February 21, 1951"; that the defendant Burrell H. Farnsley "as trial judge in said proceeding, by the exercise of arbitrary power, refused to take judicial notice of facts of record in his own court," which showed the statements in the notice were false, fraudulent and corrupt, and that defendant, Burrell H. Farnsley as trial judge in the proceedings by arbitrary exercise of judicial power refused to file with the record in the proceeding a separate finding of the law and facts on which he rendered his judgment, which separate finding the plaintiff had requested, in accordance with the law of the State of Kentucky; that the plaintiff prosecuted an appeal to the Court of Appeals of Kentucky from that judgment and on January 28, 1952, executed a good and sufficient supersedeas bond to stay proceedings in the lower court during the pendency of the appeal; that on February 21, 1952, after issuance of the order of supersedeas, the defendants Burrell H. Farnsley, Tom Mapother, Elmer Morgan and Leonard Slater disobeyed the order of supersedeas, reopened the proceedings in the lower court, amended the notice on which the judgment had been rendered and filed a self-serving affidavit and two exhibits containing fraudulent and illegal testimony; that the defendants, Tom Mapother, Leonard Slater and Elmer Morgan filed in the Court of Appeals of Kentucky a document styled "Appellee's Transcript of the Record" containing the affidavit and exhibits filed in the lower Court February 21, 1952, which is alleged to have been done in "defiant contempt of the due process and equal protection clauses of the Constitution of the United States, and the United States criminal laws"; that plaintiff filed his written motion in the Court of Appeals to strike the said document and illegal and fraudulent affidavit and exhibits from the record of the appeal, which motion was denied by the "arbitrary exercise of judicial power, and that plaintiff was thereby denied due process of law and deprived of the equal protection of the laws of the state of Kentucky;" that the opinion written in said appeal by the defendant Brady Stewart was an abandonment of the facts in the record of the case and a wide departure from the laws of the State of Kentucky and failed to mention or decide decisive legal questions and suppressed vital facts in the record of the case and misrepresented a personal judgment against Leonard Slater, in order to establish a fictitious base on which to affirm the lower court; that plaintiff's petition for rehearing filed in the Court of Ap-

peals was denied by the "arbitrary exercise of judicial power" thereby denying plaintiff the equal protection of the laws of the State of Kentucky; that plaintiff filed a motion with the defendant, Porter Sims, as Chief Justice of the Court of Appeals to stay the mandate of the Court in said appeal and grant him time in which to prepare and file in the United States Supreme Court petition for a writ of certiorari in said case, and was denied the equal protection of the law by the arbitrary and capricious ruling of the defendant, Porter Sims, in the overruling of his motion.

It is alleged that the defendants acted in collusion and in obedience to or in concert and sympathy with the common objectives of a pre-existing and continuing conspiracy against the plaintiff.

This paragraph alleges that plaintiff has suffered a heavy loss in time and money and sustained heavy special damages in the sum of $500,000 actual damage and is entitled to punitive damages in the sum of $1,000,000 against the defendants.

Paragraph two of the petition alleges that the judgment rendered against him October 26, 1951, for $555.85 is a nullity and a void judgment and is subject to collateral attack at any time in any Court and that said judgment was rendered in violation of the rights secured to plaintiff by the Constitution of the United States and is voidable under the federal laws. It is then alleged that although said judgment is a nullity, plaintiff is unable to enforce the laws in his behalf or to protect himself from the void judgment "because of bitter and malicious prejudice existing against him on the part of high judicial officers in the State of Kentucky," and bitter prejudice against him on the part of other parties and persons influential in the political and social life of the State of Kentucky"; that he is and will be completely unable to protect himself and enforce the law in his own behalf unless the Court issue its order of injunction against the defendants, Leonard Slater,

Tom Mapother and Elmer Morgan, commanding and compelling them, and each of them, to proceed no further under said void judgment.

The prayer of paragraph two of the petition is that an order of injunction against the three defendants last named, issue enjoining them from proceeding further under the said judgment and for a judgment of this Court declaring the judgment for $555.85 rendered October 26, 1951, null and void.

Paragraph three of the petition alleges that on March 31, 1951, plaintiff filed an action in the Chancery Branch of the Jefferson Circuit Court against the corporate defendant, Slater & Gilroy, Inc., in which he charged the said defendant with violations of a written contract with him and with misrepresenting itself as the publishers of the "Four Keys to Kentucky", a reference history written and published by the plaintiff. He alleges that "defendants herein, acting or claiming to act under color of law in the said case, denied him and caused him to be denied the equal protection of the laws of the State of Kentucky by the arbitrary exercise of judicial powers and by falsehood and fraud in said case, in violation of the Constitution of the United States, and the laws of Congress made thereunder"; that defendants, Tom Mapother and Elmer Morgan, commenced and carried on a premeditated and persistent effort to prejudice the plaintiff in said case and obstructed the due course of justice. He avers that in an attempt to escape from the arbitrary rulings made in that case and to avoid prejudicial misconduct that on October 26, 1951, he filed a motion to withdraw without prejudice all the equitable claims made in that action and to have the case transferred out of the Chancery Branch of the Court to the Common Law Division in order to secure justice at the hands of a jury and that he was successful in the effort to so transfer the action; that thereafter, on April 21, 1952, the defendant, Ray Bossmeyer, as trial judge of the Jefferson Circuit Court "by

arbitrary exercise and abuse of judicial powers" in said case, dismissed his said petition and denied plaintiff his right to a trial by jury and thereby deprived him of due process of law and denied him the equal protection of the law; that he prosecuted an appeal to the Court of Appeals from the judgment dismissing the action and again was denied and deprived of the equal protection of the laws by the defendant, Bert T. Combs, and "the specious reasoning he indulged in by the spurious opinion he wrote in the said appeal to conceal the injustice done the plaintiff in the case".

The allegation of paragraph 3 as to his damage is that "because and by reason of the violations of the said contract by the defendant Slater and Gilroy, Inc., his said history has become involved in litigation and the proper and timely marketing of the said historical work has been greatly delayed and restricted in sales and plaintiff has suffered heavy loss in time and money therefrom because of the defendant's wrongful acts in denying him his Civil Rights herein, and plaintiff has been damaged as set out in paragraph one hereof."

Paragraph one prays for damages against the plaintiffs jointly and severally for $1,500,000.

Paragraph four is allegedly an "alternative cause of action" because of denial of civil rights under Title 18, Section 53 of the criminal provisions of the Civil Rights Statutes.

In an amended complaint filed September 21, 1954, plaintiff alleges that the causes of action in paragraphs one, two, three and four, arise under the provisions of Sections 1983 and 1985, Title 42 U.S.C.A.; that the cause of action in paragraph five of the complaint arises under the provisions of Title 42, Section 1986 of the Code.

In paragraph four, plaintiff alleges that he has been active in opposing violations and practices which undermine the Constitution of the United States and active in exposing the Communist World Conspiracy to overthrow this Republic and in that work has engendered bitter prejudice and caused criminal libels to be published against him and that the defendants in this action, acting in obedience to or in concert and sympathy with a pre-existing and continuing conspiracy, have caused a denial of plaintiff's civil rights; that the Louisville Courier Journal is a party to the conspiracy and one of the original conspirators and that the two newspapers, the Courier Journal and The Louisville Times have been "energetic and avid" in promoting the common objectives of the said conspiracy by suppression of truth and by publishing and republishing false and libelous statements against plaintiff; that in the years 1946 and 1948, the two newspapers published and republished a false and libelous statement which accused him (plaintiff) of being a national director of a front organization of the Ku Klux Klan, and that the statements were published with the knowledge that they were false, fraudulent and corrupt and were published in furtherance of the common objectives of the conspiracy; that the two newspapers, and Barry W. Bingham on February 19, 1953, published and republished false, fraudulent and libelous statements against the plaintiff, accusing him of publishing "A Hate Sheet"; that said publications were false and corrupt and published for the criminal purpose of intimidating prospective advertisers from patronizing plaintiff's newspapers; that Barry W. Bingham, the Courier Journal and Louisville Times are active in political life in the State of Kentucky and seek to dominate and control the selection of public officials in the State of Kentucky and constitute a link "in an international propaganda chain", which allegedly is a threat to the perpetuity of the constitutional form of government of the United States; that said three defendants exerted great influence in the denial and cause of denial to plaintiff of his civil rights complained about in paragraphs one, three and four of the complaint.

The complaint then alleges that the defendant, John L. Kelty, as a deputy clerk of the Jefferson County Circuit Court, was assigned to the particular Court in which the summary proceeding commenced against plaintiff by Slater, Mapother and Morgan, as alleged in paragraph one, and that Kelty acted as Clerk during the pendency of that summary proceeding. It then alleges that the defendant, John L. Kelty, "at the conclusion of the said summary proceeding against plaintiff * * * was shifted across the hall to the court room of the defendant, Ray Bossmeyer, to act as clerk of that court while plaintiff's case against Slater and Gilroy, Inc. was pending therein."; that Kelty exhibited strong prejudice against plaintiff's legal rights in both proceedings (that is, in the summary proceedings instituted against plaintiff by Slater and the action instituted by plaintiff against Slater & Gilroy, Inc.) by refusing to accurately and properly record rulings made in the case and in refusing to have the transcript of the record in the summary proceeding properly prepared for the plaintiff to be used on the appeal and it is alleged that Kelty by being selected as the Clerk of the Division of the Jefferson Circuit Court in which plaintiff is involved in litigation shows that Kelty is the "liaison" (sic) in Louisville, Kentucky between defendants and the alleged conspirators to coordinate their steps.

It is then alleged that by reason of the conspiracies and the concerted and sympathetic action resulting in the denial of plaintiff of his rights as alleged in his complaint that he has suffered heavy and special damages and again the complaint prays for judgment against "the defendants" in the amount of $1,500,000 "as in paragraph one herein".

Paragraph five of the complaint is alleged to be an alternative action at law for damages for the refusal and failure of the defendants to prevent the plaintiff from being denied his civil rights alleged in paragraphs one, three and four of the complaint, allegedly arises under the provisions of Title 8, Section 47 U.S.C.A. (the subsequently filed amended complaint alleges that the cause of action in paragraph five arises under the provisions of Title 42, Section 1986 of the Code) and alleges that the defendants knew of and could have prevented the denial of plaintiff's civil rights and that it was their duty to prevent such denial. It is alleged that defendants in their refusal thereby violated the law and the discharge of their duties under the law and that their refusal has resulted in the denial of his civil rights and again plaintiff prays for judgment against "jointly and severally as asked for in paragraph one of this petition."

Various motions have been filed by the defendants. Some of the motions relate to paragraphing the complaint, etc., but all of the defendants have filed motions to dismiss the complaint on the ground (1) that there being no diversity of citizenship, the Court lacks jurisdiction and (2) because no cause of action arising under any federal law is raised and no facts are alleged to show that the power of the State has been used to deprive plaintiff of his civil or statutory rights.

Section 1983 of Title 42 and Section 1985 of Title 42, U.S.C.A. are the sections alleged by plaintiff to be the sources of his cause of action as set up in paragraphs one, two, three and four of the complaint. These sections are as follows:

"1983. Civil action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties.

"(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

"Obstructing Justice; intimidating party, witness, or juror

"(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

"Depriving persons of rights or privileges

"(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

Section 1986 of Title 42, allegedly constituting sources of the cause of action in paragraph five, is as follows:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in

section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."

It is difficult to denude the complaint of the vituperative allegations and conclusions, both of law and fact, so as to consider whether the complaint finally states facts which constitute a claim upon which relief can be granted in a Federal Court.

The plaintiff in one of his briefs filed concludes by saying that he has been the victim of arbitrary exercise and abuse of the judicial powers for a long, long, time; that it has embittered his life and destroyed his boyish ambitions, and that he has sworn by the memory of all that is pure, decent and honorable, that it shall now be brought to an end. It is not surprising that such admitted bitterness is apparent in almost every allegation of the complaint.

Such allegations of course add nothing to the complaint and in fact add to the

difficulty the Court has in undertaking to analyze the petition and weigh the allegations of fact against the motion to dismiss. A similar tendency was noted by the Supreme Court in the complaint involved in Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. On page 10 of 321 U.S., on page 402 of 64 S.Ct., in speaking of the opprobrious epithets directed at the conduct of the defendant, the Court said:

> "Such allegations are insufficient under our decisions to raise any issue of equal protection of the laws or to call upon a federal court to try questions of state law in order to discover a purposeful discrimination in the administration of the laws of Illinois which is not alleged."

In the case of Moffett v. Commerce Trust Company, 8 Cir., 187 F.2d 242, 248, the Court said:

> "Plaintiff's allegations that the decisions of the various State courts in litigation in which she was involved were void or arbitrarily or willfully made merely expresses an opinion not uncommon among defeated litigants, and, as appears from the face of the complaint, not entertained by the State Supreme Courts which reviewed the judgments. The charge that the State Court judgments were intentionally and purposefully against plaintiff, aside from the fact that the language used would apply equally as well to the decision of any court, right or wrong, adds nothing to the force or effect of the complaint."

In the case of Campo v. Niemeyer, 7 Cir., 182 F.2d 115, 118, the Court said:

> "Despite the vituperative accusations against defendants, a fair reading of the complaint discloses that she complains only of an alleged invasion of a private right. She was not subjected to any greater hazard than any other citizen of Illinois who is called upon to defend a law suit. Not every denial of a

right conferred by state law involves a denial of the equal protection of the laws."

The complaint in this case complains as regards the defendants, Mapother and Morgan, attorneys, Slater and Slater and Gilroy, Inc., litigants, John L. Kelty, a deputy clerk of the Jefferson Circuit Court, Ray Bossmeyer and Burrell H. Farnsley, Judges of the Jefferson Circuit Court, Brady M. Stewart, Bert T. Combs and Porter Sims, Judges of the Court of Appeals, and the Courier Journal and Louisville Times, a publishing company, and alleges in substance that the plaintiff, Grubbs, was unsuccessful in two separate law suits, both instituted in the Jefferson Circuit Court, one against him and the other by him, and that both judgments adverse to him were appealed to the Court of Appeals of Kentucky, where the lower Court's judgments were affirmed and became final.

Federal Courts take judicial knowledge of the decisions of all Courts (State and Federal but not foreign) and of the facts that limit each decision. Armstrong v. Alliance Trust Company, 5 Cir., 126 F.2d 164. Therefore, the Court takes judicial knowledge and notice of the cases in the Kentucky Court of Appeals. The first case is Grubbs v. Slater, Ky., 266 S.W.2d 85. The second case is that of Grubbs v. Slater & Gilroy, Inc., Ky., 267 S.W.2d 754.

The opinion in the first case was prepared for the Court of Appeals by the defendant, Judge Brady M. Stewart. The opinion in the second case above referred to was prepared for the Court of Appeals by Judge Bert T. Combs.

One of the questions raised by the motion to dismiss is whether the attorneys, Mapother and Morgan, are subject to liability under the civil rights statutes. In the case of Botonne v. Lindsley, 10 Cir., 170 F.2d 705, 706, the Court said:

"We seriously doubt whether lawyers who invoke the jurisdiction of a State Court for the purpose of prosecuting a claim against a private individual, are state functionaries acting under color of law within the meaning of Section 43 [42 U.S.C.A. 1983]."

See also annotation 13 A.L.R.2d 465, to the effect that it is well settled that allegations that private persons violated plaintiff's rights contrary to the due process guaranty of either the Fifth or Fourteenth Amendments do not state a substantial or meritorious federal question sufficient to vest federal jurisdiction because as a matter of substantive constitutional law, the two due process clauses afford protection only against governmental activity through some governmental agency and do not afford it against acts committed by private persons, citing Givens v. Moll, 5 Cir., 177 F.2d 765.

In the latter case, the Court characterized as fantastic that acts of a lawyer are acts of a State, so that suits against him for wrongs he has allegedly done present federal questions under the due process clause giving rise to federal jurisdiction.

It is, therefore, concluded that no cause of action is stated against the defendants, Tom Mapother and Elmer Morgan.

The next question presented is whether the Judges of the Jefferson Circuit Court and the three Judges of the Court of Appeals of Kentucky are answerable in this case, conceding only for the purpose of determining the applicable law that their conduct was arbitrary or capricious.

As early as 1871, in the case of Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646, the Supreme Court said that an order or judgment entered in the performance of the duty of Judges is a judicial act done by a Judge in the discharge of his duties, and that he can not be subjected to responsibility for it in a civil action, however erroneous the act may have been and however injurious in its consequences it may have proved to the plaintiff. The Court said, at page 347 of 80 U.S.:

"For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority invested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English judge, it would establish the weakness of judicial authority in a degrading responsibility."

On page 348 of 80 U.S. the Court continues:

"If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action."

See also Alzua v. Johnson, 231 U.S. 106, 107, 34 S.Ct. 27, 58 L.Ed. 142.

The plaintiff, however, insists in his brief and insisted in oral argument that the Supreme Court has in a broader interpretation of civil rights statutes relied upon by him nullified its former doctrine of immunity to Judges and relies upon United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, and particularly upon the case of Picking v. Pennsylvania Railroad Company, 3 Cir., 151 F.2d 240.

It must be conceded that the Picking case strongly supports the plaintiff's contention. The defendants in the Pickings action were police officials, a New York Judge, a New York District Attorney, Governor of Pennsylvania, a Pennsylvania Justice of the Peace, an Assistant Attorney General of Pennsylvania, and the Pennsylvania Railroad.

Relying upon the case of United States v. Classic, supra, and Screws v. U. S., 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, the Court of Appeals in the Third Circuit concluded that Congress had given a right of action founded in tort to every individual whose federal rights were trespassed upon by any officer acting under pretense of state law and held that if the complaint alleged that the plaintiffs were deprived of a federal right by state officers or officials acting under color of any law, the officials might be required to respond in damages to the aggrieved plaintiff.

In a subsequent case, however, of Francis v. Crafts, 1 Cir., 203 F.2d 809, Judge Magruder observed that the Picking case was decided in 1945 without benefit of the illumination found in the opinion of the Supreme Court in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, decided in 1950. Judge Magruder noted that in view of the opinion of the Supreme Court in the case of Tenney v. Brandhove he had no doubt that the Third Circuit would no longer feel obliged to read the Civil Rights Act in such a literal and unqualified manner as to impose liabilities for damages upon a state judicial officer for acts done in the exercise of his judicial function, saying that judicial officers of a state could not stand in any less favorable position than do state legislators, in respect to immunity from civil liability for acts done in their official capacity.

The case of Tenney v. Brandhove, supra, observed that immunity of state legislators is for the public good and said, 341 U.S. at page 377, 71 S.Ct. at page 788:

"The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon the conclu-

**564**

sion of a pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives."

It was said by Judge McAllister in McShane v. Moldovan, 6 Cir., 172 F.2d 1016, referring with approval to the case of Botonne v. Lindsley, supra, that it was doubtful that a judge acting in his official capacity even in concert with officers of his court acts under color of state law in the trial of a case between private parties, thereby distinguishing Botonne v. Lindsley with McShane v. Moldovan, the latter being a case arising out of criminal prosecution and he continued to say that in a civil action where plaintiff claimed a deprivation of due process and equal protection of the law in a state trial court he had no just complaint where the case was appealed to the State Supreme Court and the judgment of the lower court is affirmed. That circumstance is true in the case at bar.

This Court concludes that the complaint in this case does not state a claim upon which this Court could grant any relief as against the defendant judges of the State and Appellate Courts.

As to the defendant, John L. Kelty, it is difficult to decipher from the complaint what action he could have taken except to record the judgments ordered by the Judges of the Jefferson Circuit Court. He is not legally responsible for the judgments ordered entered by the Judges of the Jefferson Circuit Court, one of which followed the verdict of the jury. Hence, no valid claim against this defendant is contained in the many allegations of the complaint.

The remaining defendants are the corporation, the Courier Journal and Louisville Times, and Barry Bingham and the gravamen of the complaint against these defendants is that there was published erroneous and false statements in the columns of the papers with respect to the plaintiff. These defendants are clothed with neither state power nor authority, or authorized to act officially under any state statute.

If any wrong occurred to the plaintiff by reason of false publication, his cause of action was complete in the State Court (diversity being absent).

"The wrongful act of individuals is a private wrong." McShane v. Moldovan, supra [172 F.2d 1018].

For the reasons stated, the motions of the several defendants to dismiss the complaint herein is granted, and an order to that effect is this day entered.