Johnny KING, Plaintiff-Appellee,

v.

Robert H. LOVE, Defendant-Appellant.

No. 83–5927.

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1985.
Decided July 3, 1985.

James D. Causey (argued), Memphis, Tenn., Alice L. Gallaher, Memphis, Tenn., for defendant-appellant.

Asa H. Hoke (argued), Memphis, Tenn., Sidney Gilreath, Gilreath & Associates, Knoxville, Tenn., for plaintiff-appellee.

Before KENNEDY and CONTIE, Circuit Judges, and KINNEARY, District Judge.[*]

CONTIE, Circuit Judge.

Defendant Robert Love, a City Court judge in Memphis, Tennessee, appeals from a jury verdict awarding $10,000 in compensatory damages and $50,000 in punitive damages to plaintiff Johnny King in this action arising under 42 U.S.C. § 1983. For the reasons set forth below, we vacate the judgment and remand for further proceedings.

## I.

In January 1979, King reported to the Tennessee Department of Safety that his driver's license had been stolen. The Department issued a replacement license. On February 4, 1979, W.C. Anderson was arrested for driving while intoxicated. He produced King's stolen license, however, and the police completed the ticket in King's name. Anderson subsequently failed to appear in court to answer the charge. As a result, an arrest warrant in King's name was issued. King eventually learned of the warrant and voluntarily contacted the police Warrant Squad and a member of the City Prosecutor's staff in order to explain that a mistake had been made. The prosecutor instructed King to appear in Memphis City Court.

When King appeared in court before Judge Love on October 5, 1979, a different prosecutor was present. Although King offered to explain the mistake, Judge Love continued the case and instructed him to retain an attorney. King reappeared before Judge Love without counsel on December 12, 1979. King testified at trial that he had contacted several lawyers between early October and early December 1979. Although he was working in late 1979, he testified at trial that he could not afford an attorney at that time. The record reflects that when King reappeared without counsel, Judge Love again continued the case and instructed him to hire a lawyer.

King appeared before Judge Love without counsel for a third time on March 4, 1980. King later testified that although he calmly attempted to explain the mistaken identity problem, Judge Love refused to listen and ordered him to be incarcerated without bond for contempt in having again appeared without counsel. Judge Love testified that King shouted and shook his fist

[*] The Honorable Joseph P. Kinneary, United States District Judge for the Southern District of Ohio, sitting by designation.

and that King was jailed for this contemptuous conduct rather than for appearing without counsel.

It is undisputed that King remained in jail from 2:00 P.M. on March 4 until 10:00 A.M. on March 7. Attorney Otis Higgs obtained King's release. The erroneous driving while intoxicated charge against King was dropped and a warrant for Anderson's arrest was issued. King subsequently filed a complaint against Judge Love with the Tennessee Court of the Judiciary. That disciplinary tribunal scheduled a hearing for August 20, 1980.

In June 1980, Judge Love asked police officer Pittman to do him a "favor" by executing the Anderson arrest warrant. Pittman testified that Judge Love stated that the subject of the warrant had filed a complaint against him. Pittman and Judge Love subsequently had a telephone conversation during which Pittman indicated that he had located the man to be arrested. At this time, Pittman thought that King and Anderson were the same person. Sometime later, Pittman and Judge Love met by chance at lunch. In response to Judge Love's inquiry about whether the Anderson arrest warrant had been executed, Pittman stated that it would be executed when another police officer returned from vacation. Judge Love instructed Pittman to change the warrant from $2,500 bond to no bond. Pittman then informed Judge Love that the ticket and the arrest warrant named different persons, i.e., King and Anderson respectively. Pittman testified that Judge Love responded that King and Anderson "were one and the same" (Tr. at 439). Judge Love denied making that statement. He further testified that he wanted the warrant executed so that he could investigate a rumor heard from a man, identified only as one who "frequently hung around the police station" (Tr. at 231), that King had illegally sold his license to Anderson.

On August 19, 1980, one day before the hearing scheduled by the Tennessee Court of the Judiciary, officers Pittman and Green appeared at King's home with the Anderson arrest warrant. The officers asked for "W.C. Anderson, alias Johnny King" (Tr. at 28). King testified that although he attempted to explain the officers' mistake, they arrested him anyway. During the trip to the police station, King again protested that a mistake had been made. According to King, officer Green responded that "Judge Love is trying to put us in the middle of this" (Tr. at 31).

The officers took King to the Bureau of Identification where fingerprint analysis revealed that King and Anderson were indeed different people. Police legal advisor Keenan then took King before Judge Love in order to determine which man Love wanted. Upon seeing King, Judge Love recessed the court and talked privately with Keenan. Keenan's testimony about his conversation with Judge Love follows:

> He [Judge Love] told me: "Do you know who, who this guy is?" I said: "No." He said: "This is the guy that is scheduled to testify against me in the judiciary panel." I did not know that there was a hearing scheduled. I, I wasn't aware of that, really, at that point in time. So I said: "Well, I understand; however, Your Honor, we can't hold this man. We are going to have to release him unless you can tell me this is the guy that is wanted on the warrant." He said: "Well, go ahead and release him then." I said: "Fine," and we turned and I took Mr. King back to the prosecutor's office. [Tr. at 346.]

Keenan then instructed officers Pittman and Green to take King home. The August 19 episode lasted several hours.

King subsequently sued the City, Judge Love and officers Pittman and Green. Count One of the complaint alleged that Judge Love had unlawfully incarcerated him on March 4, 1980. Count Two alleged that Judge Love and officers Pittman and Green had participated in an illegal arrest on August 19, 1980. The district court dismissed King's action against the City and the jury returned a verdict in favor of the police officers. These determinations are not at issue on this appeal. The district court ruled that Judge Love was not enti-

tled either to absolute judicial immunity or to a directed verdict. The jury awarded King $10,000 in compensatory damages and $50,000 in punitive damages. On appeal, Judge Love contends that this action is barred under the doctrine of absolute judicial immunity, that the district court should have granted a directed verdict and that the district court committed other reversible errors during trial. Since the judgment must be vacated and the case remanded for a new trial, we address only the first two issues.

## II.

■ In analyzing the absolute judicial immunity claim, Judge Love's conduct with respect to the March 4, 1980 and August 19, 1980 incidents must be considered separately. We address the March 4, 1980 incident first.

The parties agree that the driving while intoxicated allegation asserted against King was a misdemeanor charge. Section one of Chapter 288 of the Private Acts of Tennessee of 1972 provides that municipal courts in counties having a population of 600,000 or more have concurrent jurisdiction with the criminal courts and general sessions courts over all misdemeanors. Under this section, municipal courts in Shelby County, Tennessee, where Memphis is located, have jurisdiction over misdemeanor cases. Thus, the City Court over which Judge Love presided had subject matter jurisdiction in King's case.

The contempt powers of Tennessee judges are statutorily defined. Tenn.Code Ann. § 29–9–103. That section states that "where not otherwise specifically provided," circuit, chancery and appellate courts may impose no more than ten days in jail and a fifty dollar fine for contempt. All other courts are limited to imposing a ten dollar fine. Since the Memphis City Court is not a circuit, chancery or appellate court,

judges presiding over that court may impose no more than a ten dollar fine for contempt of court. Although Chapter 288 of the Private Acts of Tennessee of 1972 grants the Memphis City Court concurrent jurisdiction with the criminal courts and general sessions courts over misdemeanor cases, that Chapter does not specifically provide for expanded contempt powers as required by Tenn.Code Ann. § 29–9–103. Consequently, Judge Love exceeded his authority in jailing King for contempt on March 4, 1980.[1]

■ If the Memphis City Court were a court of general jurisdiction, then Judge Love would be entitled to absolute judicial immunity with respect to the March 4, 1980 incident even though he exceeded his authority. Provided that they do not engage in non-judicial acts or act in the clear absence of all jurisdiction, judges presiding over courts of general jurisdiction are absolutely immune from suits for damages even if they act erroneously, corruptly or in excess of jurisdiction. *See, e.g., Stump v. Sparkman,* 435 U.S. 349, 356–59, 98 S.Ct. 1099, 1104–06, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher,* 80 U.S. [13 Wall.] 335, 351, 20 L.Ed. 646 (1871); *Sevier v. Turner,* 742 F.2d 262, 271 (6th Cir.1984). An act is non-judicial if it is one not normally performed by a judicial officer or if the parties did not deal with the judge in his official capacity. *See Stump,* 435 U.S. at 362, 98 S.Ct. at 1107. A judge acts in the clear absence of all jurisdiction if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides. *See Stump,* 435 U.S. at 357–59, 98 S.Ct. at 1105–06; *Bradley,* 80 U.S. at 351–52. Since questions regarding subject matter jurisdiction often are difficult, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump,* 435 U.S. at 356, 98 S.Ct. at 1105. Moreover, actions taken in the clear ab-

---

1. The recent Opinion No. 84–283 issued by the Attorney General of the State of Tennessee on October 18, 1984 is not to the contrary. In that situation, the City's charter expressly granted to City judges the same contempt powers as circuit and criminal court judges. Unlike the present case, therefore, the special provision requirement of Tenn.Code Ann. § 29–9–103 was satisfied.

sence of all jurisdiction must be distinguished from those taken in excess of jurisdiction. *See Bradley,* 80 U.S. at 351. Thus, a judge of a court of general jurisdiction is absolutely immune from an action for damages if he exceeds his authority in resolving a matter over which his court has subject matter jurisdiction. *See Stump,* 435 U.S. at 357–59, 98 S.Ct. at 1105–06 (judge immune even though he exceeded his authority in ordering a woman to undergo an involuntary sterilization); *Bradley,* 80 U.S. at 352 (judge is immune even if he exceeds his authority either in labelling permissible conduct as criminal or in sentencing a person to greater punishment than provided by law).

In the present case, Judge Love's decision to incarcerate King was a judicial act because jailing persons for contempt of court is a function normally performed by judges and because King and the prosecutor were dealing with Judge Love in his official capacity during the March 4, 1980 proceeding. Furthermore, although Judge Love exceeded his authority in incarcerating King rather than fining him not more than ten dollars, the City Court had subject matter jurisdiction over the misdemeanor charge. Since Judge Love acted in excess of jurisdiction rather than in the clear absence of all jurisdiction, he would be entitled to absolute immunity were the Memphis City Court a court of general jurisdiction.

The district court found, however, that the Memphis City Court is a court of limited jurisdiction. Neither party contests this finding. The question arises, therefore, of whether judges presiding over courts of limited jurisdiction may be sued for judicial acts done merely in excess of jurisdiction or whether plaintiffs must prove that such judges have acted in the clear absence of all jurisdiction as required by *Stump* and *Bradley.*

■ The district court held that judges of courts of limited jurisdiction may be sued for judicial acts done merely in excess of jurisdiction (App. at 55–56). Although the Supreme Court cases relied upon by the district court contain language supporting such a view, *see Alzua v. Johnson,* 231 U.S. 106, 111, 34 S.Ct. 27, 29, 58 L.Ed. 142 (1913); *Bradley,* 80 U.S. at 351; *Randall v. Brigham,* 74 U.S. [7 Wall.] 523, 535–36, 19 L.Ed. 285 (1868), we hold that judges of courts of limited jurisdiction are entitled to absolute immunity for their judicial acts unless they act in the clear absence of all jurisdiction.

First, we emphasize that since the *Alzua, Bradley* and *Randall* cases involved suits against judges of courts having general jurisdiction, any statements made by the Supreme Court about judges of courts having only limited or inferior jurisdiction were *dicta.* Moreover, in *Bradley,* 80 U.S., at 351, the court simply summarized statements made in *Randall.* In turn, *Randall* merely assumed for purposes of argument that judges of courts of limited jurisdiction are entitled to less protection than judges of courts of general jurisdiction:

> In reference to judges of limited or inferior authority, it has been held that they are protected only when they act within their jurisdiction. *If this be the case with respect to them,* no such limitation exists with respect to judges of superior or general authority. [Emphasis supplied.]

74 U.S. at 535–36. Thus, even the persuasive value of the *dicta* in *Bradley* and *Randall* is low.

Second, both this circuit and other circuits have applied the broader absolute immunity standard to judges of courts of limited jurisdiction. In *Castorr v. Brundage,* 674 F.2d 531, 537 (6th Cir.), *cert. denied,* 459 U.S. 928, 103 S.Ct. 240, 74 L.Ed.2d 189 (1982), for example, this court held, citing *Stump,* that a judge in the Juvenile Division of a county Probate Court was absolutely immune from an action for damages. The *Stump* case, of course, involved application of the clear absence of all jurisdiction standard. *See also Hurlburt v. Graham,* 323 F.2d 723, 725 (6th Cir.1963) (where a justice of the peace had subject matter jurisdiction over a

reckless driving charge, he was absolutely immune from an action for damages).

The Fifth, Seventh and Ninth Circuits have also held that regardless of the status that a state judge has in the judicial hierarchy, he is entitled to absolute immunity for judicial acts not done in the clear absence of all jurisdiction. *See Ammons v. Baldwin,* 705 F.2d 1445, 1447 (5th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 999, 79 L.Ed.2d 232 (1984) (justice of the peace); *Brewer v. Blackwell,* 692 F.2d 387, 396 (5th Cir.1982) (justice of the peace); *Lopez v. Vanderwater,* 620 F.2d 1229, 1234 (7th Cir.), *cert. dismissed,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980); *O'Neil v. City of Lake Oswego,* 642 F.2d 367, 368 n. 2 (9th Cir.1981); *Gregory v. Thompson,* 500 F.2d 59, 62 (9th Cir.1974) (justice of the peace). The *Lopez* and *O'Neil* cases are particularly instructive. The *Lopez* decision involved conduct of a local judge who, like Judge Love, had jurisdiction only in misdemeanor cases. The Seventh Circuit nevertheless applied *Stump* and held that because the judge had subject matter jurisdiction over the misdemeanor charge in question, the judge did not act in the clear absence of all jurisdiction in arraigning, convicting and sentencing the defendant even though grave irregularities marked the proceedings. 620 F.2d at 1234. In *O'Neil,* a *pro tem* municipal court judge, as did Judge Love, exceeded his authority in convicting a defendant of, and having him incarcerated for, contempt of court. The Ninth Circuit applied the clear absence of all jurisdiction standard and held that because the judge possessed jurisdiction over the subject matter, he was absolutely immune from suit. 642 F.2d at 368–70.[2]

Third, the federal courts have applied the *Stump-Bradley* clear absence of all jurisdiction standard to the judicial acts of federal judges. Under these decisions, federal judges are absolutely immune from suits for damages even if they act in excess of jurisdiction. *See United States v. Claiborne,* 727 F.2d 842, 845 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984) (citing *Stump*); *Skolnick v. Campbell,* 454 F.2d 531, 533 (7th Cir.1971); *O'Bryan v. Chandler,* 352 F.2d 987, 988 (10th Cir.1965), *cert. denied,* 384 U.S. 926, 86 S.Ct. 1444, 16 L.Ed.2d 530 (1966); *Heasley v. Davies,* 342 F.2d 786, 788 (8th Cir.1965); *Meredith v. Van Oosterhout,* 286 F.2d 216, 220 (8th Cir.1960), *cert. denied,* 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745 (1961). The federal courts indisputably are courts of limited jurisdiction. Consequently, the cited cases support the proposition that judges of courts of limited jurisdiction are absolutely immune from suits for damages if they act in excess of jurisdiction but do not act in the clear absence of all jurisdiction.[3]

Fourth, applying the clear absence of all jurisdiction standard to judges of courts of limited jurisdiction comports with the policy expressed in *Bradley* that where a court has subject matter jurisdiction over a particular controversy, the judge should be absolutely immune from a damages action stemming from his decision about the extent of his authority:

---

**2.** On its facts, *Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), supports the conclusion that state judges presiding over courts of limited jurisdiction are entitled to the same immunity (or lack thereof) as are judges of courts of general jurisdiction. In *Pulliam,* the petitioner was a state magistrate in a court of limited jurisdiction. In holding that injunctive and declaratory relief could be obtained against the judge and that an award of attorney's fees was available to the plaintiff under 42 U.S.C. § 1988, the Court did not distinguish between judges of courts of limited and general jurisdiction. The Court clearly intended its decision to apply to both types of judges.

**3.** Both *Stump* and *Bradley* applied the clear absence of all jurisdiction standard to courts of "superior" or "general" jurisdiction. *See* 435 U.S. at 356, 98 S.Ct. at 1104; 80 U.S. at 351. It could be argued that although the federal courts are courts of limited jurisdiction, they nevertheless are "superior" courts. The term "superior court" is defined, however, as a court of "general or extensive jurisdiction." Black's Law Dictionary 1289 (5th Ed.1979). Thus, the terms "general" and "superior" appear to be synonymous.

But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case.... Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised.

80 U.S. at 352. We acknowledge that a plaintiff will often find it easier to prove that a judge of a court of limited jurisdiction acted in the clear absence of all jurisdiction than a judge of a court of general jurisdiction because the subject matter jurisdiction of a court of limited jurisdiction often is unambiguously defined by statute. We hold only that where a judge of a court of limited jurisdiction engages in judicial acts in deciding a case over which the court has subject matter jurisdiction, he is absolutely immune from suits for damages even if he exceeds his authority or his jurisdiction. Since the Memphis City Court had subject matter jurisdiction over the driving while intoxicated charge against King and since incarcerating King for contempt of court was a judicial act, King may not sue Judge Love for damages stemming from the March 4, 1980 incident.

## III.

We next consider Judge Love's conduct in connection with King's arrest on August 19, 1980. As has been indicated, officer Pittman testified that Judge Love requested him to execute the Anderson arrest warrant, instructed him to change the warrant to a no bond warrant and told him that King and Anderson were the same person. King contended at trial that Judge Love wanted him arrested in order to pressure him not to testify at the Tennessee Court of the Judiciary hearing scheduled for the next day. Judge Love testified, however, that he did not tell Pittman that King and Anderson were the same person.

■ We hold that although Judge Love performed a judicial act in ordering that there be no bond on the Anderson arrest warrant,[4] deliberately misleading officer Pittman about the separate identities of King and Anderson, if Judge Love did so, was a non-judicial act. The record contains evidence that Judge Love told Pittman that King and Anderson were the same person in a private conversation occurring well after the Anderson arrest warrant had been issued. Although setting the amount of bond on an arrest warrant is a function normally performed by a judge, *see Stump*, 435 U.S. at 362, 98 S.Ct. at 1107 (standard articulated); *Sevier*, 742 F.2d at 272 (same), the act of deliberately misleading officers who are to execute a warrant about the identity of the person sought well after the warrant has been issued is not. Accordingly, if officer Pittman's account of his conversations with Judge Love is accurate, then Judge Love is not entitled to absolute judicial immunity in connection with the August 19, 1980 incident.

■ Since the jury rendered a general verdict, however, we are unable to discern which account of the events of August 19, 1980 that it believed. For instance, the jury may have disbelieved King's testimony about the August 19 incident and based the entire verdict upon the protected conduct of March 4, 1980. Unlike some state courts, the federal courts do not assume that the jury decided all issues in the prevailing party's favor. *See Aquionics Acceptance Corp. v. Kollar*, 503 F.2d 1225, 1227 (6th Cir.1974); *Volasco Products Co. v. Lloyd A. Fry Roofing Co.*, 308 F.2d 383, 390 (6th Cir.1962), *cert. denied*, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963). Thus, the verdict in this case cannot stand. Moreover, even if the jury accepted King's version of what transpired on August 19, 1980, it still may have based part of its verdict on the immunized conduct of March 4, 1980. Since there is no assurance that the entire verdict was based upon Judge

**4.** The record is unclear concerning who issued the Anderson arrest warrant.

Love's allegedly non-judicial conduct in procuring King's arrest on August 19, 1980, the judgment must be vacated and the case remanded for a new trial.

### IV.

Judge Love's final argument is that no remand is necessary because the district court should have granted his motion for directed verdict. In view of our disposition of King's claim regarding the March 4, 1980 incident, we consider this assignment of error only as to the claim involving the August 19, 1980 arrest.

This court's standard of review is identical to the standard used by the district court. *See Hersch v. United States*, 719 F.2d 873, 877 (6th Cir.1983). A motion for directed verdict should be granted only if, viewing the evidence and the inferences that reasonably may be drawn therefrom in the light most favorable to the party opposing the motion, there is "a complete absence of pleading or proof on an issue or issues material to the cause of action or ... there are no controverted issues of fact upon which reasonable men could differ." *Duncan v. City of Oneida*, 735 F.2d 998, 999 (6th Cir.1984). *See also Hersch*, 719 F.2d at 876–77; *Rockwell International Corp. v. Regional Emergency Medical Services of Northwest Ohio, Inc.*, 688 F.2d 29, 31 (6th Cir.1982). Under this standard, the district court correctly refused to grant a directed verdict to Judge Love. Officer Pittman testified, for instance, that Judge Love told him that the subject of the Anderson arrest warrant had filed a complaint against him and that King and Anderson were the same person. Although Judge Love denied making these statements, a reasonable jury could have believed Pittman. We have already held that if Pittman's testimony were believed by a jury, then Judge Love engaged in non-judicial conduct.

The judgment of the district court is VACATED and the case is REMANDED for a new trial. Punitive damages may be awarded on retrial if the jury finds liability and if the standards set forth in *Smith v.*

*Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983) and *Grimm v. Leinart*, 705 F.2d 179, 182 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984), are satisfied. The parties shall bear their own costs on this appeal.