936 F.2d 572
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Douglas Dwight BENNETT, Plaintiff-Appellant,
v.
Michael BATCHIK, 52-1 District Court Judge, State of
Michigan, L. Brooks Patterson, John Does employed by the
County of Oakland, John Nichols, Sheriff for the County of
Oakland, Dr. John Jones, Director of the Oakland County
District Courts Probation, David Steinhoff, Audrey
Steinhoff, Defendants-Appellees.
 No. 90-2036.
 United States Court of Appeals, Sixth Circuit.
 June 24, 1991.
 
 Before RALPH B. GUY, Jr. and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 Plaintiff, Douglas Dwight Bennett, appeals from the district court's dismissal of his civil rights action seeking money damages from six defendants pursuant to 42 U.S.C. Secs. 1983 and 1985. Plaintiff brought his complaint proceeding in pro se against Michael Batchik, District Court Judge for the State of Michigan; L. Brooks Patterson, Oakland County Prosecuting Attorney; John Nichols, Oakland County Sheriff; and Dr. John Jones, Director of the Oakland County Probation Department.[1] Plaintiff has also sued two individuals, David and Audrey Steinhoff. The district court granted summary judgment to defendants Batchik, Patterson, and Jones on the basis that these defendants had absolute and/or quasi judicial immunity from a lawsuit brought pursuant to 42 U.S.C. Sec. 1983. Plaintiff's complaint against Sheriff Nichols was dismissed on the basis that Nichols could not be held vicariously liable for the alleged acts of certain unnamed deputy sheriffs. Finally, the district court granted the Steinhoffs' motion to dismiss under Fed.R.Civ.P. 12(b)(6) on the finding that Bennett had failed to state a claim upon which relief may be granted. For the reasons set forth below, we affirm.
 
 I.
 
 2
 Plaintiff's federal action was the aftermath of a state court proceeding that arose out of a contract dispute between the Steinhoffs and Bennett.[2] Plaintiff, a cement contractor who installs concrete curbing, contracted with David and Audrey Steinhoff for the installation of a steel seawall at their home in Union Lake. The Steinhoffs paid plaintiff a $1,000 deposit, and Bennett began the work and ordered certain materials. However, prior to completion of the project, the Steinhoffs called plaintiff and indicated that they were dissatisfied with the seawall and wanted their money back. Plaintiff then went to the Steinhoffs' home to recover certain equipment, and David Steinhoff refused to allow him to remove it. Apparently a shoving match occurred, and David Steinhoff allegedly produced a rifle and told plaintiff to leave the premises. In response to this altercation, Bennett called the Oakland County Sheriff's Department, and he was thereafter allowed to recover his personal property.
 
 
 3
 Subsequent to the altercation, the Steinhoffs filed a formal complaint with the Oakland County Prosecuting Attorney. Thereafter, a warrant was issued naming Bennett as the defendant and charging him with being an unlicensed contractor in violation of the Occupational Code of Michigan. See Mich.Comp.Laws Ann. Secs. 339.601(1), 339.2401. Several months later, Bennett was stopped by the Southfield Police for driving a motor vehicle with an expired license plate, and, after a record check, the police were informed that there was a warrant for Bennett's arrest involving the Steinhoffs' complaint. Bennett was arrested and later appeared in the state district court to answer to the warrant, and a trial date was set.
 
 
 4
 After a jury trial, Bennett was found guilty of being an unlicensed contractor in violation of Michigan law.[3] Judge Batchik ordered plaintiff to report to the Oakland County District Courts Probation Department for evaluation. Bennett was sentenced to probation for one year and assessed fines and costs of $510.00, ordered to pay probation oversight expenses of $300.00, and ordered to pay restitution in the amount of $1,000 to the Steinhoffs.
 
 
 5
 Bennett reported to Oakland County Probation and signed the order of probation, acknowledging that the order had been explained to him. After speaking with a friend, plaintiff apparently arrived at the conclusion that his order of probation was a contractual agreement between him and the probation department. Subsequent to this conversation, plaintiff filed with the state district court a document that he referred to as a "NOTICE OF VOIDING OF A CONTRACT KNOWN AS PROS. ORDER NO. 84-66727, Docket No. 84-003118," which he apparently felt voided the order of probation.[4]
 
 
 6
 Judge Batchik dismissed plaintiff's notice of voiding a contract and ordered Bennett to pay the probation expenses and restitution. Bennett failed to report to probation or comply with the judge's order. Bennett's probation was then cancelled and a bench warrant for his arrest was issued by the court. Bennett was subsequently arrested by two sheriff's deputies and appeared again in the district court before Judge Batchik, where he was ordered to pay all costs and restitution or be incarcerated. Bennett thereafter paid the fines and restitution, the case was closed, and plaintiff then brought this suit.
 
 
 7
 Plaintiff's complaint states that he brings his action pursuant to 42 U.S.C. Secs. 1983 and 1985. Count one of plaintiff's complaint essentially seeks to recover the total cost of the contract entered into between Bennett and the Steinhoffs, with Bennett claiming that because he did not represent himself to be a licensed contractor, he now has a right to recover the contract costs. Count two of plaintiff's complaint alleges a conspiracy to violate plaintiff's constitutional right to contract. Specifically, plaintiff alleges that the police report filed with the Sheriff's Department by Deputy Richardson (the report filed after investigating Bennett's call to the Sheriff's Department concerning the altercation between Bennett and Steinhoff) includes language which was favorable to the Steinhoffs. Accordingly, plaintiff seeks damages for slander and for injury to his credibility caused by Sheriff Nichols and Deputy Richardson.[5] Count three of plaintiff's complaint alleges a conspiracy between the Steinhoffs and Prosecuting Attorney Patterson to intervene in a legal contract between Bennett and the Steinhoffs. According to plaintiff, this conspiracy forced him to defend himself in a criminal prosecution causing mental anguish, court costs, legal expenses, loss of pay, arrest, and incarceration. For this claim, plaintiff seeks $750,000 in damages.
 
 
 8
 Elsewhere in his complaint plaintiff alleges that Dr. Jones conspired with Deborah McAleer, a probation department employee, to violate Bennett's constitutional rights. This claim is not based upon any specific factual allegations, but apparently stems from events that occurred when plaintiff reported to his probation officer and signed the order of probation. Plaintiff's complaint sets forth no factual allegations relating to Judge Batchik, and, in plaintiff's brief filed in the federal district court, Bennett simply alleges that Judge Batchik willfully and knowingly violated his oath of office. In his deposition, Bennett admitted that the only conversation or contact he ever had with Judge Batchik was in the courtroom. Plaintiff testified that the basis for his allegation that Judge Batchik violated his fourth, fifth, and fourteenth amendment rights are evidentiary decisions made during plaintiff's trial and the ordering of restitution as part of a criminal sentence.
 
 
 9
 In response to the defendants' motions for dismissal, the district court found that Judge Batchik and Prosecutor Patterson were absolutely immune from civil actions under 42 U.S.C. Sec. 1983. The district court held that Dr. Jones also had absolute immunity for his actions because he was acting pursuant to an order of sentencing by the court. Further, the district court concluded that plaintiff failed to show any personal involvement on behalf of Sheriff Nichols or the existence of any causal connection between the actions of Sheriff Nichols and the alleged constitutional violations, and therefore liability on behalf of the sheriff could not be established.[6] The district court found that the Steinhoffs, as private citizens, did not act under color of state law and that Bennett had failed to satisfy the race/class-based animus requirements of section 1985. Finally, the district court concluded that plaintiff's claim to recover the cost of the seawall contract was based upon an issue already litigated in state court--the need for plaintiff to be licensed as a contractor--and that Bennett therefore had no cause of action against the Steinhoffs on the contract.
 
 II.
 
 10
 We review a district court's grant of summary judgment de novo. Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 11
 Judicial immunity is available to judges presiding over courts of both general and limited jurisdiction. King v. Love, 766 F.2d 962, 966 (6th Cir.), cert. denied, 474 U.S. 971 (1985). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (quoting Bradley v. Fisher, 13 Wall. 335, 351 (1872)). However, judicial immunity is not available if the wrongful conduct was committed pursuant to a non-judicial act, which is an act not normally performed by a judicial officer or one committed with parties who were not dealing with the judge in his official capacity. Forrester v. White, 484 U.S. 219, 227-30 (1988). A judge acts in the clear absence of all jurisdiction only if the matter upon which he or she acts is clearly outside the subject matter of the court over which he or she presides. King, 766 F.2d at 965.
 
 
 12
 It is clear that whatever Batchik did to give rise to plaintiff's complaint was done in his judicial capacity, as Bennett relies only on acts committed by Batchik in his official capacity while Bennett was being prosecuted under the criminal provisions of the Occupational Code of Michigan, Mich.Comp.Laws Ann. Secs. 339.101 et seq. Evidentiary rulings and criminal sentencings are acts performed by Batchik in his official capacity,[7] and the prosecution of Bennett was within the subject matter jurisdiction of the court. Accordingly, the trial court properly ruled that the doctrine of absolute immunity from 42 U.S.C. Sec. 1983 actions applied to the acts complained of in Bennett's complaint against Judge Batchik.
 
 III.
 
 13
 We also affirm the district court's decision that Prosecuting Attorney Patterson has absolute immunity from liability in Bennett's section 1983 action. Acts performed by a state prosecuting attorney, acting within the scope of his duties in initiating and pursuing a criminal prosecution and in presenting the state's case, are absolutely immune from a civil suit for damages for alleged deprivation of constitutional rights under 42 U.S.C. Sec. 1983. Imbler v. Pachtman, 424 U.S. 409 (1976); Joseph v. Patterson, 795 F.2d 549 (6th Cir.1986). Bennett alleges no specific conduct in his complaint regarding acts of the prosecutor for which Patterson could be liable. In his deposition, plaintiff testified that the reason Patterson was involved in the lawsuit was because people that worked for Patterson prosecuted a complaint against Bennett. Unless Bennett can demonstrate that the decision to prosecute was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification"--conduct that Bennett does not allege--then Patterson enjoys absolute immunity from liability sought to be imposed upon him for his decision to prosecute. Wayte v. United States, 470 U.S. 598, 608 (1985).
 
 IV.
 
 14
 It is difficult to discern from plaintiff's complaint the basis for his claim against Dr. Jones, Director of Oakland County Probation. However, plaintiff's claim appears to arise from the fact that an employee of the probation department, Deborah McAleer, made demands on the plaintiff that he considered improper. According to Bennett, McAleer demanded that plaintiff pay the fines that the judge imposed, as well as the oversight fees and restitution, or a failure to pay would subject Bennett to further adverse action.[8] Although the district court awarded summary judgment to Dr. Jones on the finding that Jones and his employees were immune from a suit brought pursuant to section 1983, we find that, like plaintiff's action against the Steinhoffs, plaintiff fails to properly state a section 1983 claim against Dr. Jones.
 
 
 15
 Whether the district court correctly dismissed a suit pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law subject to de novo review. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 111 S.Ct. 182 (1990). The court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. Meador, 902 F.2d at 475.
 
 
 16
 Under 42 U.S.C. Sec. 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Federal Constitution or the laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-57 (1978); Moore v. City of Paducah, 890 F.2d 831, 833-34 (6th Cir.1989). Absent either element, a claim will not be stated. Plaintiff's claim against Dr. Jones suffers from several inadequacies. First, plaintiff's allegations do not rise to the level of a constitutional violation. Plaintiff fails to articulate what federal right he was deprived of by McAleer's statements, and we fail to discern what liberty or property interest secured by federal law could be even remotely implicated by the advice and warnings given by McAleer to Bennett. We find no merit to a section 1983 claim that is based solely on the allegation that a probation officer informed Bennett of the probable consequences of his failure to comply with a court order.
 
 
 17
 Second, in order to find supervisors liable, a plaintiff must allege that the supervisors condoned, encouraged, or participated in the alleged misconduct. Birrell v. Brown, 867 F.2d 956, 959 (6th Cir.1989); Alioto v. City of Shively, 835 F.2d 1173, 1175 (6th Cir.1987). Liability under section 1983 will not be imposed solely on the basis of respondeat superior and must be based on more than the right to control employees. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984). Even assuming that McAleer's actions could establish a violation of plaintiff's rights, plaintiff does not allege that Dr. Jones implicitly authorized, approved, or knowingly acquiesced in the conduct of McAleer.
 
 
 18
 Finally, courts have extended absolute immunity from damage actions under 42 U.S.C. Sec. 1983 not only to judges and prosecutors, but also to officers who bear a close association to the judicial process. Demoran v. Witt, 781 F.2d 155, 156 (9th Cir.1986) (probation officers preparing presentencing reports for state court judges are entitled to absolute immunity from section 1983 damage actions). In determining whether an officer falls within the scope of judicial immunity, the courts have adopted a "functional approach," Harlow v. Fitzgerald, 457 U.S. 800, 810 (1982), one that turns on the nature of the responsibilities of the officer. In committing the acts complained of by Bennett, McAleer merely committed acts that were part of her job as a probation officer while she was performing discretionary duties within the framework of a quasi-judicial process. Not only was the probation officer acting pursuant to her duties under a state statute, but also McAleer merely demanded that plaintiff follow the court's order. Dr. Jones is therefore entitled to summary judgment on the basis of quasi-judicial absolute immunity and on the basis that plaintiff fails to satisfy the elements necessary for stating a claim under section 1983.
 
 V.
 
 19
 Plaintiff's allegations against Sheriff Nichols--whether based upon Deputy Richardson's police report or acts committed by the two John Doe defendants when arresting Bennett--do not allege sufficient personal involvement of Nichols. As we stated when discussing plaintiff's claim against Dr. Jones, liability under section 1983 cannot be established on the basis of respondeat superior. Plaintiff has not made the requisite showing of personal involvement, as he has failed to allege that Nichols condoned, encouraged, participated, or implicitly authorized the actions of the sheriff's deputies.
 
 VI.
 
 20
 We next address plaintiff's claim against the Steinhoffs, which the district court dismissed pursuant to Fed.R.Civ.P. 12(b)(6). We reiterate that, for plaintiff to state a claim under section 1983, Bennett must allege a deprivation of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person while acting under color of state law. It is undisputed that David and Audrey Steinhoff held no public positions and thus could not be acting "under color of state law" in their individual capacities. Individually, their conduct, as alleged by Bennett, does not constitute state action.
 
 
 21
 However, in Dennis v. Sparks, 449 U.S. 24, 27 (1980), the Supreme Court held that dismissal of all defendants capable of acting under color of law due to their office or position does not necessarily require dismissal of private citizens accused of conspiracy with them. Private persons jointly engaged with state officials are acting under color of law for purposes of section 1983 actions. Macko v. Bryon, 641 F.2d 447, 449-50 (6th Cir.1981). Bennett's federal court complaint speaks of a "conspiracy between" Audrey and David Steinhoff and the prosecuting attorney "to intervene in a legal contract between" Bennett and the Steinhoffs. However, as Bennett's complaint discloses, their "conspiracy" consisted of nothing more than their being involved as an attorney and complainants in the same litigation. This is a far cry from the situation in Dennis where the litigants allegedly bribed a state court judge to issue an injunction that was subsequently dissolved by a state appellate court as having been illegally issued. Plaintiff's complaint alleges nothing but conclusory allegations and sets forth the type of concerted action which is incident to every judicial proceeding initiated by a private complaint and subsequently litigated by a prosecuting attorney. Thus, plaintiff fails to allege the deprivation of any cognizable liberty or property interest secured by federal law. The rule that requires the liberal treatment of pro se pleadings does not require lenient application of the substantive law. Wolfel v. United States, 711 F.2d 66, 67 (6th Cir.1983).
 
 VII.
 
 22
 Although none of the counts in plaintiff's complaint are specifically identified as a section 1985 claim, Bennett's "preface to complaint" states that the action is brought pursuant to both sections 1985 and 1983. The first portion of section 1985(3) and the second clause of section 1985(2) prohibit private conspiracies to deprive persons of equal protection of the laws.[9] Kush v. Rutledge, 460 U.S. 719, 725 (1983). Claims asserted under these provisions require that the conspirators' actions be motivated by race or class-based animus. Id. See also Daigle v. Gulf State Utilities Co., Local No. 2286, 794 F.2d 974, 979 (5th Cir.), cert. denied, 479 U.S. 1008 (1986). Bennett fails to assert, much less demonstrate, any racial or class-based discriminatory animus. Although the other provisions of section 1985 apply to conspiratorial activity that does not require race or class-based animus, Kush, 460 U.S. at 426, these provisions are not implicated by Bennett's claim as they "relate to institutions and processes of the Federal Government--federal officers, Sec. 1985(1); federal judicial proceedings, the first portion of Sec. 1985(2); and federal elections, the second part of Sec. 1985(3)." Kush, 460 U.S. at 724. Bennett's claims are merely based upon his state court criminal conviction. Because Bennett alleges no interference with federal institutions and processes and asserts no conspiracy guided by racial or class-based animus, plaintiff fails to state a claim under section 1985.
 
 VIII.
 
 23
 In count I of his complaint, plaintiff asserts a right to recover the price of the contract to build the Steinhoff's seawall, arguing that he was not required to be a licensed contractor. The question of whether plaintiff was required to be a licensed contractor was litigated in state court, where plaintiff was found to be in violation of a state law requiring him to be licensed and where the court ordered him to return the partial payment made on the contract to the Steinhoffs. Plaintiff's contract action in the district court, therefore, can only be construed as an effort to seek and obtain in federal district court a determination of the propriety of the jury verdict in his state case. In essence, plaintiff seeks to obtain review of a state court decision by a federal district court. This he may not do. Johns v. Supreme Court of Ohio, 753 F.2d 524, 526 (6th Cir.), cert. denied, 474 U.S. 824 (1985). A United States district court "has no authority to review final judgments of a state court in judicial proceedings." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983). Plaintiff's only remedy is to pursue an appeal in state judicial proceedings and then seek review by the United States Supreme Court. In re Sun Valley Foods Co., 801 F.2d 186, 189 (6th Cir.1986). We therefore affirm the district court's decision to dismiss plaintiff's contract claim.[10]
 
 
 24
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Some of the defendants no longer hold the offices they held when sued, however, we refer to them as they were referenced in plaintiff's complaint
 
 
 [2]
 Because pro se complaints dismissed under Rule 12(b)(6) receive liberal review, we set forth the facts as alleged by Bennett in his complaint. However, we note that liberal review does not mean that we accept the legal conclusions and unwarranted factual inferences made in a complaint. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987); Brooks v. Seiter, 779 F.2d 1177, 1179-80 (6th Cir.1985)
 
 
 [3]
 Bennett did not appeal his conviction
 
 
 [4]
 The prosecution and docket numbers referred to in Bennett's "Notice" correspond to the state court action charging and convicting Bennett of being an unlicensed contractor
 
 
 [5]
 Although plaintiff alleges damages resulting from Deputy Richardson's police report, Richardson is not named as a defendant in Bennett's complaint
 
 
 [6]
 Asserting that his civil rights were violated by the two officers who arrested him pursuant to the bench warrant, Bennett also named two John Doe defendants in his original complaint. The district court ordered plaintiff to identify the two John Doe defendants, but plaintiff failed to do so. In his brief on appeal, Bennett appears to have abandoned his claim against these two defendants, as he does not address any claims or allegations arising out of his arrest by these two deputy sheriffs
 
 
 [7]
 Even Bennett's brief to the district court states that "[t]his action taken by the Plaintiff is directed toward Michael Batchik as he acted in the official capacity as a district court judge for the State of Michigan."
 
 
 [8]
 The relevant deposition testimony states as follows:
 Q So you're saying your Complaint against [Ms. McAleer] was that she demanded that you pay the fines that the Judge imposed and the oversight fees and that you make restitution, is that what you are saying?
 A Correct.
 Q And you told her that you could not do that because if you paid it that this document marked Exhibit 2 became a contract?
 A Became a legal document, yes, if any portion or part of it was paid.
 Q Did she tell you your conclusion in that regard was incorrect?
 A Correct, she stated her position.
 Q She tried to explain to you that your conclusion about this document becoming legally binding was incorrect?
 A She advised me that I should start paying or else additional action would be taken.
 Q Is there anything else that she did that you feel is improper?
 A No.
 (Deposition of Plaintiff at 58-59).
 
 
 [9]
 The first part of section 1985(3) provides a cause of action against two or more persons who "conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws...." 42 U.S.C. Sec. 1985(3). The second portion of section 1985(2) applies to conspiracies to obstruct the course of justice in state courts "with intent to deny any citizen the equal protection of the laws...." 42 U.S.C. Sec. 1985(2)
 
 
 [10]
 There is an exception to the rule that precludes a lower federal court from entertaining a collateral attack on a state court judgment. A federal court may review a state judicial proceeding that is "alleged to have been procured through fraud, deception, accident, or mistake." In re Sun Valley, 801 F.2d at 189. However, Bennett presents no evidence to support the application of this exception