961 F.2d 1578
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara MARTIN, Plaintiff-Appellant,
v.
CITY OF YOUNGSTOWN and Patrick Ungaro, Defendants-Appellees.
 Nos. 91-3335, 91-3336.
 United States Court of Appeals, Sixth Circuit.
 April 28, 1992.
 
 Before KEITH and BOYCE F. MARTIN, Jr., Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff Barbara Martin ("Martin") filed a lawsuit against the City of Youngstown ("defendant" or "City") for alleged sexual harassment in the workplace. She sought damages pursuant to Title VII of the Civil Rights Act and 42 U.S.C. § 1983. Martin also alleged that she had been retaliated against by defendant after she filed a claim of sexual harassment. Martin was granted a jury trial on the § 1983 cause of action. The jury trial began on November 14, 1990, and the case was submitted to the jury on November 21, 1990. The jury concluded that Martin was not subjected to "unwelcomed sexual harassment" at her place of employment.
 
 
 2
 The district court ruled on the Title VII claim, and held that Martin had been retaliated against for complaining of sexual harassment. The district court granted remedial damages primarily requiring defendant to implement a process for handling sexual harassment claims and providing training to its employees on sexual harassment. The district court provided for Martin to return to work within 30 days after defendant implemented the training program.
 
 
 3
 Martin claims on appeal that the district court should have awarded her back and front pay damages, that a new trial should have been granted due to various errors discussed below, and that the jury verdict was not supported by the evidence. Defendant cross-appeals challenging the district court's finding of retaliation and its grant of remedial damages. For the reasons stated below, we REVERSE the jury verdict as well as the district court's denial of back pay, REMAND for a calculation of damages, and AFFIRM the remainder of the district court's judgment.
 
 I.
 
 4
 Martin was hired by defendant in January 1988. She was hired as a plant operator, a position which entails various duties in the Youngstown Waste Water Treatment Plant (the "plant"). Martin was the first woman hired as a plant operator. Martin contends that she was sexually harassed shortly after she began work at the plant.
 
 
 5
 Martin claims that for a month after she began work, she was not given a properly fitting uniform and was harassed about the male, oversized uniform that she had to wear. There were no restroom/locker room facilities for female employees until several months after she had been employed, and the door to the locker room that was finally assigned to Martin did not have a lock on it. When the plant finally added a lock to her locker room, Martin's immediate supervisor Dominic Greco ("Greco") allegedly threatened to drill a hole through the showers so that he could observe Martin showering.
 
 
 6
 During Martin's one year tenure at defendant's plant, several other incidents occurred. Martin alleged that on one occasion, Union President Crawford ("Crawford") slid a pencil between Martin's legs in the presence of several co-workers. She claims that on another occasion she was ridiculed by Greco about a lump found in her breast when she requested assignment to light duties until the lump could be diagnosed. Greco allegedly responded to Martin's request by telling her to tell her husband to "quit playing" with her "boobs." Other sexual jokes and innuendos were made by various male co-workers. Several of the workers admitted making sexual jokes, but testified that Martin participated in the allegedly harassing activities. It is undisputed that Martin complained to Greco about the alleged harassment, but he did nothing because he did not consider the incidents to amount to harassment. Martin claims that she was afraid to bypass Greco because he told her that if she crossed him, "there was a price to pay."
 
 
 7
 Martin testified at trial that in September 1988 she approached the Chief Operation Manager, Gene Potesta ("Potesta"), regarding the ongoing harassment. Potesta said that he would set up an appointment with the plant manager, Thomas Cardarelli ("Cardarelli"), but did not do so. Martin later scheduled an appointment directly with Cardarelli. During this meeting, Martin showed Cardarelli a note that had been given to her by Crawford, which said, "I can take you for a ride in my new car, but it's hard to have sex in a 'Vette." Martin also showed Cardarelli obscene literature that male employees left at stations where she had to work. In addition, she claimed that on one occasion, Greco tried to kiss her. She asked for a crew transfer, but Cardarelli allegedly responded that such action would make Greco look guilty and, therefore, denied Martin's request for a transfer.
 
 
 8
 Finally, when Martin could find no internal remedy, she sought help from an attorney, who called defendant's Equal Employment Opportunity officer, William Carter ("Carter"). They set up a meeting, which was attended by Martin, her attorney, Carter, Cardarelli, Greco and Crawford. Cardarelli and Carter both testified at trial that Greco admitted the kissing incident during the meeting, but implied that it was consensual. Greco denied the incident altogether at trial. It was undisputed that Crawford wrote the above referenced note, although he denied its obvious sexual meaning.
 
 
 9
 A short time after the meeting, Martin injured her hand in a work-related accident and was on medical leave for several weeks. Upon her return, she claims that she was subjected to adverse treatment as a result of her complaint of sexual harassment. She testified that Greco begin to keep negative notes about Martin's performance, which had been satisfactory prior to the meeting. In addition, Greco allegedly became hostile to Martin. Martin claims that Greco told her he wanted her to be his "whore," and on one occasion he was so offensive that Martin began crying in front of co-workers and contractors.
 
 
 10
 Martin claimed, and another ex-employee testified, that Greco told other workers not to talk to her. Martin and her family began receiving threatening phone calls. When Martin was finally transferred to a different crew as requested, she was assigned only "primary" duties, which are more difficult than "secondary" duties and are ordinarily interspersed in a plant operator's workload. In addition, the primary duties deprived her of technical experience which would give her knowledge and experience necessary for obtaining a state plant operator license.
 
 
 11
 Martin claimed that other acts were taken against her in retaliation for her complaint. For example, her locker room/restroom facilities were moved to a newly built maintenance building which was far removed from her work area and previous locker room. The new building was isolated and was occupied by plant workers on only one of three shifts.
 
 
 12
 After the transfer, Martin was frequently relieved late by her co-worker under the plant's buddy system. She had always been relieved in a timely manner before the meeting regarding harassment. On one occasion when Greco was filling in to supervise Martin's crew, he assigned her to an extremely difficult task requiring Martin to use her previously injured hand. Her hand swelled as a result of doing the work to the point that she became physically unable to do the job. Martin testified that she asked Greco, "why are you treating me like this?" Greco allegedly responded by yelling that "you started this." Following the incident, Martin was again placed on medical leave for her hand and did not return to work at the plant.
 
 
 13
 In addition to these allegations, following the jury verdict, Martin claimed that one of the jurors at trial failed to disclose relations with persons employed by the City, which precluded Martin from exercising her right to challenge the juror for bias. Martin moved for a new trial on the basis that she was denied her Sixth Amendment right to an impartial jury. The district court denied the motion for a new trial.
 
 
 14
 Martin then filed the instant appeal and defendant cross-appealed. Both appeals were timely.
 
 II.
 A.
 
 15
 We will first address Martin's challenge to the jury verdict. On appeal, we may only reverse a jury verdict upon finding that there are no controverted issues of facts upon which reasonable men could differ. King v. Love, 766 F.2d 962, 969 (6th Cir.), cert. denied, 474 U.S. 971 (1985). We conclude that the undisputed evidence in this case should have resulted in a verdict for Martin.
 
 
 16
 To prevail on a sexual harassment claim, the plaintiff must establish that harassment on the basis of sex was "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.' " Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). There are essentially two issues raised by the facts of this case. First, we must determine whether the facts show that Martin welcomed or voluntarily participated in several of the acts of which she now complains. We must then review the jury's finding that the undisputed acts did not create an abusive work environment.
 
 
 17
 Regarding the first claim, Martin's co-workers testified that she was often the subject of or was present while the men made sexual jokes, but they claimed that Martin participated in such activities. It is undisputed, however, that Martin complained to Greco, her supervisor, about the sexual jokes and innuendos. Greco admitted that Martin complained to him about being sexually harassed and stated that he took no action because "as far as [he] was concerned, it wasn't harassment." We believe that this admission by Martin's supervisor that she complained to him about the conduct completely rebuts the allegation that Martin welcomed the conduct.
 
 
 18
 In addition, we find the following undisputed facts very persuasive. First, when Martin began her employment, she was not given adequate restroom or locker room facilities and that the male employees could obtain access to her locker room once it was provided. Crawford, the union president, gave Martin a note of a highly offensive sexual nature. Crawford's only defense was that the note was not of a sexual nature, a claim which lacks merit on its face. Obscene literature was left at work stations that Martin shared with her co-workers. There was undisputed testimony as well that Martin's co-workers and some of the plant supervisors repeated rumors of a sexual nature about Martin. Three persons testified that Martin's supervisor, Greco, attempted to kiss her, although Greco denied this at trial.
 
 
 19
 Given these facts, we conclude that the verdict that Martin was not sexually harassed is unsupported by the evidence at trial. We believe that the undisputed ongoing conduct by Martin's male counterparts created an abusive work environment. Therefore, we reverse the verdict and hold that Martin was sexually harassed during her employment with the City.
 
 B.
 
 20
 The next issue, raised by defendant, is that the trial court erred in finding that Martin was retaliated against for filing her sexual harassment complaint. When reviewing a district court's findings in a Title VII case, we may not reverse unless we find clear error. Wrenn v. Gould, 808 F.2d 493, 499 (6th Cir.1987), cert. denied, 484 U.S. 1067 (1988).
 
 
 21
 Defendant claims that the district court's finding that defendant retaliated against Martin is not supported by the evidence. Defendant claims that because Martin was transferred to another department per her request, the transfer was clearly not retaliatory. Moreover, defendant claims that the working conditions in the new department were standard in that department. Therefore, Martin's harsher work conditions were directly due to the transfer, and were not due to defendant's attempt to retaliate.
 
 
 22
 Defendant's claim lacks merit primarily because it ignores the other conditions to which Martin claims to have been subjected in retaliation for her complaint of sexual harassment. Martin claimed that she was harassed and given negative reviews by Greco, that other employees were instructed not to talk to her, that she was given different and less desirable job duties than others in her transferred position and that her locker room was moved to a remote part of the plant grounds. The district court found this testimony persuasive, and it provided a sufficient basis upon which the court could conclude that defendant retaliated against Martin. Therefore, we affirm the district court's ruling.
 
 C.
 
 23
 Following its determination that Martin was retaliated against for complaining of sexual harassment, the district court fashioned specific remedial measures for the unlawful conduct. Defendant claims that the remedies are inappropriate and are aimed to redress the underlying harassment claim, and not the retaliation claim. We conclude that the equitable damage award imposed by the district court was aimed at defendant's acts of retaliation and were designed to remedy that unlawful activity. Accordingly, we affirm the court's order for remedial action by defendant and Martin's reinstatement.
 
 
 24
 Martin contends that the district court erred by denying her damages for back and front pay. Martin argues that she should be granted damages for front pay in order to retrain for another job. She states that "the normal practice is to award front pay in those situations where reinstatement is not appropriate." Shore v. Federal Express Corp., 777 F.2d 1155, 1159 (6th Cir.1985). Although the district court explicitly ordered that Martin return to work, she claims that reinstatement is inappropriate in this case based on her doctor's assessment that Martin should not return to work at the plant.
 
 
 25
 Having heard Martin's doctor testify, the district court ordered that Martin return to work and that her failure to do so would result in a forfeiture of her claim. The district court explicitly found contrary to the doctor's testimony in holding that reinstatement was appropriate. Martin has failed to show that this determination was clearly erroneous. Therefore, the denial of front pay is affirmed.
 
 
 26
 As to Martin's request for back pay, we have previously stated that "back pay awards should completely redress the economic injury the claimant has suffered as a result of discrimination." Rasimas v. Michigan Department of Mental Health, 714 F.2d 614, 626 (6th Cir.1983), cert. denied, 466 U.S. 950 (1984). The issue in this case is whether Martin suffered any economic injury as a result of the sexual harassment and retaliatory action by defendant.
 
 
 27
 It is undisputed that Martin was not expressly discharged from the Waste Water Treatment Plant. Nor did she allege that she was constructively discharged. But while Martin failed to characterize her leaving defendant's employ as a result of the harassment as "constructive discharge," the district court erred in not reviewing whether the facts supported a finding of constructive discharge.
 
 
 28
 We believe that there was overwhelming evidence to support a finding of constructive discharge. The sexual harassment to which Martin was subjected continued after she complained and, in fact, worsened in response to her complaint. She was given inferior job duties and subjected to humiliating and degrading comments. Martin was physically injured as a result of acts by one of her supervisors in retaliation for her complaints. Moreover, her doctor issued a letter excusing Martin from returning to work based on psychological effects she suffered as a result of the abusive environment. While the district court's remedial damages may adequately redress those work conditions, we believe that prior to Martin leaving the plant, those conditions were of such a nature that they resulted in her constructive discharge. Therefore, we reverse the district court's denial of back pay damages and remand for a determination of the amount due Martin as a result of her constructive discharge.
 
 D.
 
 29
 Martin next argues that she is entitled to a new trial on the basis of numerous alleged errors, most of which we find meritless. We feel compelled to address one of these contentions, however, although it is not essential to our determination of this case. That issue relates to the alleged juror perjury committed during voir dire.
 
 
 30
 Martin claims that the juror failed to disclose information during voir dire, thereby jeopardizing her right to an impartial jury. Specifically, one of the jurors initially denied having any relatives working for the City of Youngstown. It was discovered during voir dire that Potesta, one of Martin's supervisors, was related to the juror by marriage. Martin was given the opportunity to object to the juror for cause, but elected not to do so. Martin claims that after the trial, however, she discovered several other family relationships between the same juror and employees in various city departments. She then moved for a new trial. The district court held that Martin could not challenge the juror since the jury verdict had already been rendered.
 
 
 31
 The district court's failure to inquire into Martin's allegations was entirely inappropriate. It is incumbent on a district court to hold an evidentiary hearing on the issue of a juror's failure to disclose information on voir dire. McCoy v. Goldston, 652 F.2d 654 (6th Cir.1981). While Martin may have waived her right to challenge the juror on matters discovered during voir dire, she should not have been precluded from challenging the juror for alleged misrepresentations discovered later in the proceedings. We, therefore, admonish the district court for its failure to conduct a hearing on this important matter. Nevertheless, we hold that the error was harmless in light of our decision to reverse the jury verdict.
 
 III.
 
 32
 For the above stated reasons, we REVERSE the jury verdict and the district court's denial of back pay, REMAND for a calculation of damages in accordance with this decision, and AFFIRM the district court's judgment in all other respects.